**In the Matter of KEWANEE BOILER CORP., Debtor.**

**OakFabco, Inc., Plaintiff,**

v.

**American Standard, Inc., Defendant.**

Bankruptcy No. 86 B 16937.
Adversary No. 02 A 00076.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 29, 2003.

Frederick W. Stein, Oak Brook, IL, for Movant or Plaintiff.

Marshall Beil, New York City, John F. Pollick, Chicago, IL, Barbara A. Sellinger, Piscataway, NJ, for Respondent or Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to the Chapter 11 bankruptcy Plan confirmed by Debtor Kewanee Boiler Corporation, Inc., now known as OakFabco, Inc. ("Oak-Fabco" or "Debtor"). OakFabco seeks here to bind Defendant American Standard, Inc. ("American Standard" or "Defendant") to that Plan even though Defendant was not originally scheduled as a creditor or given notice of the Debtor's bankruptcy case prior to confirmation. However, American Standard was given post confirmation notice and offered an opportunity to file a claim and participate in the confirmed Plan, and it did so.

OakFabco now seeks to stop American Standard from pursuing claims against it under a 1970 pre-bankruptcy indemnification agreement between them or from claiming successor liability arising out of the purchase by Defendant of the Kewanee Boiler Division in 1970. OakFabco asserts that the claims at issue were prepetition debts and that American Standard was therefore barred from pursing them under the statutory injunction in 11 U.S.C. § 524(a)(2) following Plan confirmation. In addition to seeking declaratory judgment effecting that relief, OakFabco seeks damages for American Standard's alleged violation to date of the § 524(a)(2) injunction, arguing that it participated in the Plan and is therefore bound by its consequences.

Plaintiff pleaded in three Counts: asserting violation of 11 U.S.C. § 524 and for declaration that all of Defendant's claims were discharged by Plan confirmation even if Defendant had not been informed of the bankruptcy pre-confirmation (Count I); seeking unspecified damages and an injunction blocking Defendant from asserting any claims for indemnification or otherwise (Count II); and seeking injunction for pursing any further claims under the 1970 indemnification agreement (Count III).

American Standard challenged this Court's jurisdiction over issues presented here, but that challenge was rejected in an earlier Opinion holding that core jurisdiction lies here to enforce and interpret the confirmed Plan and resulting statutory injunction under § 524. *See In re Kewanee Boiler*, 270 B.R. 912 (Bankr.N.D.Ill.2002). Defendant then filed defenses and Counterclaim seeking declarations that its indemnification claims were not discharged by Plan confirmation because it had no prior notice (Count I); that settlement of the post confirmation claim filed by it was of no legal effect because the court had no authority or reason to permit it to file a late claim (Count II); that OakFabco's liability to it was not discharged by the settlement of its late claim (Count III); that OakFabco remains liable as to all matters not specifically settled (Count IV); and even if OakFabco was discharged, American Standard may obtain modification of the § 524 discharge injunction to allow it to seek recovery from insurance proceeds (Count V).

The instant Adversary proceeding was tried, evidence was taken, the parties rested, and the court now makes and enters the following Findings of Fact and Conclusions of Law.

For reasons stated below, Judgment will be entered on the Amended Complaint declaring that all claims of OakFabco are discharged to the extent that American Standard is barred from any attempt to collect from OakFabco's assets on any claims or debts arising under the indemnification agreement or under any theory of successor liability arising out of the 1970 purchase because it voluntarily participated in the Plan post confirmation and is bound by it. However, Judgment will also enter on American Standard's Fifth Counterclaim for declaratory judgment and modification of the permanent statutory injunction under 11 U.S.C. § 524 declaring that it may sue OakFabco as a nominal party for purpose of collecting from any applicable insurance coverage covering claims not specifically settled and released by settlement and dismissal of the Adversary proceeding that amended American Standard's claims.

Plaintiff's prayer for damages and for a finding of contempt based on asserted violations of § 524 will be denied since (1) the efforts of American Standard have requested defense of actions that it is entitled to receive from the insurer, if there is

coverage, and (2) no damages were proven at trial. All other relief sought by Amended Complaint and Counterclaim will be denied in the judgments.

### FINDINGS OF FACT

1. Prior to 1970, American Standard owned and operated a commercial boiler manufacturing business known as "Kewanee Boiler." Immediately prior to January 29, 1970, Kewanee Boiler operated as a division of American Standard. (Stipulated fact in Joint Pretrial Statement, Sec. III, ¶ 1).[1]

2. On January 29, 1970, American Standard sold all of the assets and certain liabilities of the Kewanee Boiler division to a newly formed Illinois corporation known as the Kewanee Boiler Corporation. (JPS, Sec.III, ¶ 2).

3. At the time of the sale, American Standard and Kewanee Boiler Corporation entered into an asset purchase agreement. In that agreement, Kewanee Boiler Corporation agreed to assume and hold American Standard harmless against all Kewanee liabilities, including "claims and complaints arising out of or in connection with any products manufactured, sold, leased or installed by Kewanee on or prior to the Closing date." (JTE 1, ¶ 6B) (JPS, Sec.III, ¶ 3).

4. Consistent with the Purchase Agreement, on March 2, 1970, Kewanee Boiler Corporation executed an Undertaking under which it agreed to indemnify American Standard for all obligations, liabilities, debts and commitments related to Kewanee boilers. In the Undertaking, Kewanee Boiler Corporation stated that, upon written notice of any claim for which indemnity may be sought, Kewanee "shall be responsible to assume the defense thereof, includ-ing the employment of counsel and the payment of all expenses." (JTE 2) (JPS, Sec.III, ¶ 4). (The January 29, 1970 asset purchase agreement and the March 2, 1970 Undertaking collectively are referred to herein as the "1970 Agreements.")

5. In the years following the execution of the 1970 Agreements, American Standard tendered to Kewanee Boiler Corporation product liability claims for defense. Despite the 1970 Agreements, Kewanee Boiler Corporation denied liability in each instance. American Standard went into state courts to seek enforcement of the 1970 Agreements, and on at least two occasions Kewanee Boiler Corporation was ordered to indemnify American Standard for its defense of personal injury actions arising from the alleged defects in Kewanee boilers. (JTE 3 and 4) (JPS, Sec.III, ¶ 5).

6. On October 28, 1986, Kewanee Boiler Corporation filed a Chapter 11 petition for bankruptcy in this Court.

7. Despite the 1970 Agreements and the non-bankruptcy court orders directing Kewanee to indemnify American Standard under the Agreements by American Standard and despite tender of several cases for defense, on January 9, 1987, Kewanee Boiler Corporation, n/k/a/ OakFabco, Inc. (hereafter, "OakFabco") filed its schedules of assets and liabilities which did not schedule or identify American Standard as a creditor or include any liabilities owed by Kewanee Boiler Corporation to American Standard or even identify contested claims by it. (JPS, Sec.III, ¶ 7).

8. On January 20, 1988, OakFabco filed in the bankruptcy case a Third Amended Disclosure Statement in connection with its proposed plan of reorganization. The Disclosure Statement revealed the existence of certain past asbestos-related

---

**1.** Stipulated facts found in Joint Pretrial Statement filed by the parties are referred to herein as "JPS." Joint Trial Exhibits attached to the JPS are cited here as "JTE _____."

product liability actions brought against the company and the possibility of future such claims. American Standard, however, was still not named as a creditor, and no actual or potential liabilities as a result of debts or obligations to American Standard were included in the Disclosure Statement. (JTE 5) (JPS, Sec.III, ¶ 8).

9. OakFabco also filed a proposed Second Amended Plan of Reorganization on January 20, 1988. The Plan did not address or treat any actual or potential liabilities as a result of debts or obligations to American Standard. (JTE 6) (JPS, Sec. III, ¶ 9).

10. The Bankruptcy Court confirmed OakFabco's Second Amended Plan of Reorganization (the "Plan") on March 9, 1988. (JTE 7) (JPS, Sec.III, ¶ 10).

11. Prior to confirmation of the Plan, American Standard was not scheduled as a creditor by Kewanee and was not served with notice of the bankruptcy or of the proposed Plan. American Standard did not appear in the bankruptcy proceedings or participate in the Plan confirmation process. (JPS, Sec.III, ¶ 11).

12. Two and a half years after confirmation of the Plan, on November 23, 1990, OakFabco filed an amended schedule of creditors listing creditors not previously included on any schedule filed by OakFabco in the bankruptcy proceedings (the "Amended Schedule"). Most of these newly listed creditors were plaintiffs suing Kewanee or co-defendants of Kewanee in products liability actions, including suits based on the alleged presence of asbestos in Kewanee boilers. (JTE 8).

13. American Standard was listed as a creditor of Kewanee (OakFabco) for the first time in the Amended Schedule.

14. At the time it filed the Amended Schedule OakFabco requested that the Court set an extended claims bar date to require and permit the parties identified for the first time in the Amended Schedule to file proofs of claim in the bankruptcy case or be forever barred from asserting those claims. (JPS, Sec.III, ¶ 13).

15. No reasons were given in the motion for a new bar date for OakFabco's failure to list American Standard or any other creditor in any prior schedule of creditors. (JTE 9). However, American Standard had notice at that time and did not object.

16. The Court granted OakFabco's motion and set a new claims bar date of March 15, 1991. (JTE 10) (JPS, Sec.III, ¶ 14).

17. Having been served with a copy of the Court order offering it a new claim bar date, and without objection or request at that time that such order be amended or vacated, American Standard filed its proof of claim in the bankruptcy case on or about March 10, 1991, asserting liability based on the 1970 Agreements in the total amount of $200,000.00. (JTE 11) (JPS, Sec.III, ¶ 15). Pursuant to the 1970 Agreements, American Standard sought in its filed claim to recover sums expended by it in defending and settling lawsuits alleging defects in the design and manufacture of Kewanee boilers, and alleged asbestos contamination and related effects. Its proof of claim pleaded the following allegation:

This claim is based on that portion of the Contract which is attached as Exhibit A. Since it cannot yet be determined what litigation will occur in the future which will be the responsibility of Kewanee, certain portions of the claim are unliquidated. In those instances where litigation has already been brought, the claim is brought for expenses, attorneys'

fees and amounts claimed in on-going litigation.

(Joint Pretrial Statement, at ¶ 15).

18. On December 17, 1993, OakFabco filed an objection to American Standard's proof of claim which stated that "Kewanee denies that it is indebted to Claimant in any amount and that the claim represents a contingent claim for contribution." (JTE 12) (JPS, Sec.III, ¶ 16).

19. The Court first addressed American Standard's claim and OakFabco's objection at a status conference on the record held March 24, 1994. OakFabco's counsel, Robert Nachman, attended in person and American Standard's counsel, Theodore Hecht, attended via telephone. After hearing from both parties, the Court directed American Standard to amend its claim into the pleading form requisite for an Adversary proceeding so as to require the claim to be set forth in greater detail and then required OakFabco's objection to be pleaded thereto in form of an Answer to the Amended Claim. The Court issued an order which directed the "claim[ant] to replead an amended claim by pleading in accord with pleading requirements of the Federal Rules of Civil Procedure." (JTE 13).

20. Going beyond what the order required, instead of filing an amended claim in the required format, American Standard amended its claim by filing the above-captioned Adversary Complaint on April 19, 1994 (hereafter "Adversary Complaint"). (JTE 14). That Adversary Complaint amended and limited the American Standard's claim to indemnification for the costs and damages incurred or to be incurred in seventeen then-pending products liability lawsuits for which American Standard had been sued for injuries arising from alleged defects in the design and manufacture of Kewanee boilers. There was no claim asserted in the Adversary Complaint either specifically or by general reference for any other claims or liability under the 1970 Agreements. The earlier broader claim language (Finding No. 17) was not included and therefore was no longer before the Court.

21. On May 20, 1994, OakFabco filed its Answer to American Standard's Adversary Complaint denying the operative allegations. (JTE 15) (JPS, Sec.III, ¶ 18).

22. In May 1994, the parties reached a settlement to allow the claim at $20,000. Pursuant to the settlement, the parties submitted to the Court two agreed orders, one dismissing the Adversary Complaint with prejudice and the second entered in the bankruptcy case allowing American Standard a general unsecured claim in the amount of $20,000 (the "Agreed Orders"). (JPS, Sec.III, ¶ 19). American Standard's claim at the time was defined by the Adversary Complaint which had amended its original claim.

23. On June 7, 1994, the Court entered the two Agreed Orders. (JTE 16) (JPS, Sec.III, ¶ 21).

24. The costs and damages relating to the seventeen then-pending products liability lawsuits were the only matters specifically resolved by entry of the Agreed Orders. OakFabco's continuing general liability under the 1970 Agreements was not in issue before the Court or specifically resolved by the parties because the Adversary Complaint which constituted the amended claim did not present that issue.

25. On January 10, 1997, American Standard received a check in the amount of $1,200 from OakFabco as a distribution from the Kewanee Sinking Fund that had been established for creditors under the confirmed Plan, in payment for American Standard's allowed claim of $20,000. (JTE 17). American Standard accepted and de-

posited the check without objection. (JPS, Sec.III, ¶ 22).

26. As part of the parties' settlement agreement that lead to the Agreed Orders, OakFabco agreed to provide American Standard with insurance information and copies of its insurance policies covering, Kewanee products during the period following the Purchase Agreements (Defendant's Exhibit D–2), and did provide such information and documents.

27. Neither the confirmation of the Plan, the parties' settlement agreement nor the two Agreed Orders referred to a discharge of liability of any insurance carriers. This Court has heretofore issued no decree or ruling affecting the right of American Standard to seek recovery from OakFabco's insurers for liability related to the 1970 Agreements.

28. During the bankruptcy proceedings, a number of individual asbestos claims against OakFabco were disallowed without prejudice to these claimants' pursuing any available insurance policies covering OakFabco or Kewanee. (JTE 20 and Defendant's Exhibit D–3.) However, prior to this Adversary proceeding, those issues as they affect American Standard were not dealt with herein.

29. In 1996 and again in 2001, American Standard tendered numerous lawsuits to OakFabco for coverage, and those suits now pend in at least 16 different states. American Standard thereby seeks reimbursement of more than $3.9 million. In each case, OakFabco refused the tender, claiming its liability had been discharged in these bankruptcy proceedings. (JTE 18 and 19) (JPS, Sec.III, ¶ 23).

30. American Standard continues to be named as a defendant and served with complaints in numerous asbestos lawsuits alleging personal injuries from exposure to Kewanee boilers. If American Standard tendered any more of such claims to OakFabco, OakFabco would take the same position as before and deny liability because of its bankruptcy Plan confirmation. American Standard intends in the future to tender such additional claims to OakFabco. (JPS, Sec.III, ¶ 24). The resolution of issues presented in this Adversary proceeding therefore will affect nationwide litigation that would otherwise need to be resolved in the many cases pending or to be filed in non-bankruptcy courts.

31. Any fact statements contained in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

### Jurisdiction Lies Over This Action

This proceeding arises as a result of and relates to the Chapter 11 proceeding of Kewanee Boiler Corporation, now known as OakFabco, Inc., which was filed in the Bankruptcy Court for the Northern District of Illinois, Eastern Division, and which was styled *In re Kewanee Boiler Corporation*, No. 86 B 16937.

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (I) and (O), and 1334, and 11 §§ U.S.C. 105 and 524(a). Core jurisdiction lies here to enforce and interpret the confirmed Plan and resulting statutory injunction barring collection of discharged claims. The Court also has jurisdiction to interpret and enforce the orders previously entered by it to settle the Adversary Complaint and claim of American Standard. *See In re Kewanee Boiler,* 270 B.R. 912 (Bankr.N.D.Ill.2002).

### Introduction

■ As discussed below, American Standard held pre-bankruptcy claims and therefore was a creditor when the Debtor filed its Chapter 11 case. The Debtor certainly knew about those claims asserted

pre-bankruptcy, but did not schedule American Standard or otherwise give it notice of the bankruptcy case prior to Plan confirmation, nor for some years thereafter. During that period American Standard was not noticed, and there is no evidence that it had actual notice of the bankruptcy case or Plan prior to confirmation. Therefore, American Standard was originally deprived of its right to participate in the bankruptcy process by filing any claim, objecting to or voting on the Plan, or otherwise. Had nothing else occurred, based on authority cited below, American Standard and other creditors similarly treated would not in any way have been bound by the confirmed Plan or restricted by the statutory injunction. A claimant who is not noticed and therefore is not allowed to participate in the Chapter 11 process is not bound by it. A holding to the contrary would modify the Bankruptcy Code's required treatment of creditors, and also endorse a Kafka-like view of American law that would be unconstitutional under the Due Process clause of the Fifth Amendment.

Remarkably, after the period of non-notice and years after Plan confirmation, Debtor moved to allow American Standard to file a late claim and thereby participate in the Plan and the fund set up by the Plan for unsecured creditors. At that point, American Standard could have objected to entry of that Order as having been sought too late or because no grounds were shown to warrant the Order, or it could have declined to file any claim after the order was entered. Had it and other creditors that were so shabbily treated and so tardily notified declined to file claims and thereby enter voluntarily into the confirmed Plan, the § 524 discharge of claims would not have applied. However, by filing a claim as permitted, and without objecting at that time to the Order, American Standard waived its possible objections to prior lack of notice, lack of grounds for the order, and affirmatively elected to participate in the confirmed Plan of which, by then, it had ample notice.

After its original claim was amended and fleshed out by filing the Adversary Complaint which thereby amended the claim, that claim was settled.

The first issue based on that claim filing and settlement is whether the entire scope of all potential claims were resolved by entering into the Plan through the claim American Standard filed, thereby becoming bound under the Plan from pursuing any other claim; or only the particular identified claims based on pending state court litigation that were specified in the amended claim filed as an Adversary Complaint. As found below, all possible indemnification and other claims were barred by Plan confirmation once American Standard voluntarily participated in the Plan thereby becoming bound by it. As a result, the Plan limited all claims American Standard owned upon the filing of bankruptcy to recovery from the Plan fund.

The second issue is whether discharge of Debtor's corporate assets from all American Standard claims affects the liability of Debtor's insurers and in any way bars American Standard from actions against the Debtor as nominal party to reach insurance proceeds for indemnification claims under the Agreement to the extent of insurance coverage. It is held below in accord with settled authority in this Circuit that defendant may still seek recovery from insurance proceeds if there is coverage (though coverage issues are not before this Court or decided here).

Finally, OakFabco's assertion of laches on the part of American Standard and asserted claim of contemptuous breach of 11 U.S.C. § 524 are rejected.

*Liability of OakFabco under the 1970 Agreements was not Originally Discharged by Confirmation of the Plan*

■ Under bankruptcy law, a claim is defined as a "right to payment," whether or not such right is "unliquidated" or "contingent." 11 U.S.C. § 101(5).

■ A "right to payment on a written indemnification contract arises at the time the indemnification agreement is executed." *Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Products Corp.)*, 209 F.3d 125, 129 (2d Cir.2000). *In re Wilbur*, 237 B.R. 203 (Bankr.M.D.Fla. 1999) (indemnification agreement signed by debtor in favor of insurance company gave rise to contingent, pre-petition claim when agreement was signed, even though insurer had not been required to make any payments on the bonds).

Thus, Kewanee/OakFabco's obligation to indemnify American Standard under the 1970 Agreements was a pre-petition claim in existence at the time of the filing of the bankruptcy petition in 1986.

Although American Standard was well-known to Kewanee at the time of the 1986 bankruptcy petition, Kewanee did not schedule American Standard as a creditor or notify American Standard of the bankruptcy petition, the claims bar date, the proceedings leading up to the formulation of the plan or the plan confirmation hearing.

■ It is well-established that the debtor's failure to schedule or notify a creditor of a Chapter 11 proceeding and the confirmation hearing precludes the creditor's claim from being discharged in the bankruptcy proceeding. *Reliable Electric Co., Inc. v. Olson Construction Company*, 726 F.2d 620 (10th Cir.1984); *see also In re Maya Construction Company*, 78 F.3d 1395 (9th Cir.1996). *See also In re Toth*, 61 B.R. 160 (Bankr.N.D.Ill.1986)

(Schmetterer, J.) and cases cited. A creditor's claim cannot be subjected to a confirmed plan that it had no opportunity to dispute.

■ Notice is the cornerstone underpinning Bankruptcy Code procedure. *Western Auto Supply v. Savage Arms, Inc. (In re Savage Industries, Inc.)*, 43 F.3d 714, 720 (1st Cir.1994). The debtor in possession or trustee must ensure that "parties in interest" must be given adequate notice and opportunity to be heard before their interests may be adversely affected. Most pertinent here are 11 U.S.C. § 1109(b) ("parties in interest" have "right to be heard" in chapter 11 case), and the requirement in § 1128(a) of notice to parties to be bound by a proposed Plan. The term "parties in interest" encompasses not only entities holding "claims" against the debtor, but any entity whose pecuniary interests might be directly and adversely affected by the proposed action. *See e.g. Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir.1993); *In re Athos Steel & Aluminum, Inc.*, 69 B.R. 515, 519 (Bankr.E.D.Pa.1987). "[N]otice ... means ... such notice as is appropriate in the particular circumstances...." 11 U.S.C. § 102(1); Fed. R. Bankr.P.2002(*l*) (empowering court to order publication of notice to "parties in interest" where "desirable" or notice by mail is "impracticable").

■ As held in this Circuit and by the United States Supreme Court, the Fifth Amendment to the Constitution also requires meaningful notice. Adequate notice lies at the heart of Due Process. Unless a person is adequately informed of proceedings that may effect denial of a legal interest, a hearing serves no purpose and resembles more a scene from Kafka than a constitutional process. *See Chicago Cable Communications v. Chicago Cable Com-*

*mission,* 879 F.2d 1540, 1546 (7th Cir. 1989), *quoting Cosby v. Ward,* 843 F.2d 967, 982 (7th Cir.1988). *See also Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 84, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988) *quoting Armstrong v. Manzo,* 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62 (1965) ("Failure to give notice violates the 'rudimentary demands of due process of law' ").

"Reasonable notice" is defined by the Supreme Court as "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). *See also Peralta v. Heights Medical Center,* 485 U.S. at 84, 108 S.Ct. at 899, and *Greene v. Lindsey,* 456 U.S. 444, 449–50, 102 S.Ct. 1874, 1877–78, 72 L.Ed.2d 249, 254 (1982) (citing this passage as the accepted standard for the adequacy of notice). *Cf. Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976) (the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner).

American Standard was originally given no notice and had no actual notice of the pending bankruptcy case prior to Plan confirmation.

Accordingly, OakFabco's continuing liability to American Standard under the 1970 Agreements was not before the Court at the time of Plan confirmation or dealt with under the Plan, and such liability and any other claims by American Standard were not and could not have been discharged by confirmation of OakFabco's Plan of reorganization when approved in 1988.

*The Ongoing Liability of OakFabco under the Agreements and any other Claims by American Standard were Bound by the Confirmed Plan through Post–Confirmation Proceedings Whereby American Standard Participated in the Confirmed Plan*

Fed. R. Bankr.P. 1009(a) allows a debtor to amend its schedules at any time prior to the case being closed, but Bankruptcy Rule 3003(c)(3) allows the setting of a late claims bar date only for "cause shown." Fed. R. Bankr.P. 3003(c)(3). Furthermore, Bankruptcy Rule 9006(b) allows the bankruptcy court upon motion to enlarge the time allowed for an act required to be done within a given period only where the movant has shown that the failure to act was the result of "excusable neglect." Fed. R. Bankr.P. 9006(b).

OakFabco's 1990 request for an extended claims bar date in this case did not include any reason, much less demonstrate cause or excusable neglect, for failing to list a number of a pre-petition debts at any time prior to confirmation of the Plan. No viable reason was or could have been offered for failing to schedule American Standard's pre-petition claims under the 1970 Agreements, as those obligations had been the subject of a written agreement and subsequent litigation between American Standard and OakFabco prior to the bankruptcy petition and Plan confirmation. Therefore, American Standard now argues that this Court "lacked authority" to grant the motion to allow it to file a late claim even though on receiving notice of the motion it raised no objection, and even though upon being given permission to participate in the confirmed Plan by filing a late claim it voluntarily chose to do so and even received a payout from the unsecured creditors fund under the Plan.

██ Where a debtor does not and cannot demonstrate good cause or excusable neglect for failing to notify a known creditor of the bankruptcy, the bankruptcy court should normally sustain an objection by that creditor to a debtor's motion to extend the claims bar date. *Omni Manufacturing Inc. v. Smith (Matter of Smith),* 21 F.3d 660 (5th Cir.1994). Arguably, the Debtor's post confirmation motions to file amended schedules and set a late claims bar date could have been rejected because Debtor gave no excuse for failure to schedule and notice American Standard and the other affected creditors earlier. However, because no objection was raised and it appeared to the Court that those creditors should at least be given notice and opportunity to participate in the fund established by the confirmed Plan for creditors if they wished to do so, the late-claims order was entered as requested.

██ American was a known creditor that was not scheduled by OakFabco until after Plan confirmation. Thus, when notified about the bankruptcy, American could have come to court and argued that it was not bound by OakFabco's confirmed Plan because it had no earlier notice of the bankruptcy. As stated in this Court's earlier Opinion, the Fifth Amendment Due Process clause means that a party must have notice of a Chapter 11 bankruptcy before it can be bound by a confirmed Plan. *Kewanee,* 198 B.R. at 528–30. It is axiomatic that a debtor must give notice to all creditors that are known or reasonably ascertainable. *Id.* at 537.

But although American Standard had an opportunity upon being given notice to object to the order allowing the filing of a late claim or to decline to file any claim, it voluntarily filed a claim and then accepted a payment on the claim settlement out of the Plan fund. American Standard voluntarily and knowingly waived any objection to the order extending its claim deadline that it now belatedly seeks to assert.

American's argument here asserting lack of court authority to allow it to file a late claim is an attempt to avoid the consequences of its own decision not to object to the extension of its time to file a claim and then its decision to participate in OakFabco's bankruptcy by filing a claim and collecting from the fund for creditors created under the Plan. Since American Standard thereby entered into and became bound by the confirmed Plan, it is restricted under 11 U.S.C. § 524(a)(2) from pursuing any claims against the Debtor's corporate assets except the claim that it filed against the Plan fund.

Bankruptcy Code § 524(a)(2) states:

(a) A discharge in a case under this title—

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

██ Section 524(a)(2) operates automatically to void any judgment obtained by a creditor of the estate before or after a discharge order. 4 Collier on Bankruptcy, § 524.02 at 524–14 (15th ed. rev.2002). However, § 524(a)(2) only applies to pre-petition claims. *Millsaps v. United States (In re Millsaps),* 133 B.R. 547, 552 (Bankr. M.D.Fla.1991).

OakFabco argues that American held a pre-petition claim under the broad Bankruptcy Code definition of "claim" in § 101(5), which includes interests that may yet be "contingent" and "unmatured."

An essential element of the Code's scheme for a broad discharge is its expansive definition of "claim." *In re Johns-Manville,* 57 B.R. 680, 686–87 (Bankr.

S.D.N.Y.1986). Leading up to the 1978 amendment to broaden that definition, the House of Representatives Committee on the Judiciary explained the purpose:

> H.R. 8200 abolishes the concept of provability in bankruptcy cases. All claims against the debtor, whether or not contingent or unliquidated, will be dealt with in the bankruptcy case. This is the procedure under current chapters IX and X. However, under the liquidation chapters of the Bankruptcy Act, certain creditors are not permitted to share in the estate because of the non-provable nature of their claims, and the debtor is not discharged from those claims. Thus, relief for the debtor is incomplete, and those creditors are not given an opportunity to collect in the case on their claims. The proposed law will permit a complete settlement of the affairs of a bankrupt debtor, and a complete discharge and fresh start.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 180 (1978), U.S.Code Cong. & Admin.News 1978, 5963, 6141.

The Report that accompanied the Senate version of the amendment explained that the new definition was intended to encompass contingent and unliquidated claims not provable under the old Bankruptcy Act. No. 989, 95th Cong. 2nd Sess. 21–22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5807–08. The intent and effect of the new definition was a significant departure from former law. Under the Bankruptcy Act, the definition of "claim" had been used, along with the concept of provability in § 63 of that Act, to limit the kinds of obligations payable in a bankruptcy case. The amended definition was intended to include any right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. By that broadest possible definition and by use of the term "claim" throughout Title 11, the proposed amendment was intended to ensure that all legal obligations of the debtor no matter how remote or contingent, would be dealt with in the bankruptcy case. It was to permit the broadest possible relief in the bankruptcy court. *Id.*

As enacted, § 101(4) virtually duplicated the language of the Senate Report, and defined a claim as a—

FN2. On Nov. 29, 1990 subsection § 101(4) was redesignated § 101(5) by Pub.L. 101–647.

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

The only notable limitation on the definition of "claim" in bankruptcy is that it must rest on a "right to payment."

A Third Circuit panel found that a party injured by a debtor's pre-petition acts holds a claim in bankruptcy only if its claim has accrued pre-confirmation under non-bankruptcy law and that party had a pre-bankruptcy right to sue. *Avellino & Bienes v. M. Frenville Co. (Matter of M. Frenville Co., Inc.),* 744 F.2d 332, 335–37 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). Although that decision rested with good reason on the requirement of a "right to payment," as part of defining "claim" under § 101(5), the *Avellino* opinion has been criticized as inconsistent with the intended

breadth and scope of § 101(5). *See* e.g. *Grady v. A.H. Robins Company, Inc.*, 839 F.2d 198, 201 (4th Cir.1988), *cert. dismissed*, 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988). Such criticism usually has sought to find an injury tort "claim" to exist even before the injury has taken place and before suit could have been filed. While that remarkable stretch of the statutory language is doubtful, it does not apply here.

The *Frenville* opinion applied to possible non-contractual actions for indemnification under New York law, under which law such causes had not yet become actionable. *Id.*, 744 F.2d at 335. There being no "right to sue" or "right to payment" and therefore no "claims" under 11 U.S.C. § 101(5), such future possible actions were not "claims" and were therefore held not to have been discharged. But the opinion clearly distinguished the facts presented there from contractual indemnification contract such as that involved here:

> The present case is different from one involving an indemnity or surety contract. When parties agree in advance that one party will indemnify the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent, [FN7] upon the signing of the agreement. *See In re THC Financial Corp.*, 686 F.2d 799, 802–04 (9th Cir.1982); *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr. S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir. (Unit A) 1981) (per curiam). Such a surety relationship is the classic case of a contingent right to payment under the Code the right to payment exists as of the signing of the agreement, but it is dependent on the occurrence of a future event. *See All Media*, 5 B.R. at 133. A & B, however, had no indemnity agreement with the Frenville. Accordingly, cases holding that a claim arises upon

the signing of an indemnity agreement are inapposite. *Id.*, 744 F.2d at 336.

Similarly, the rule under Illinois law is that a right to sue and contingent right to payment exists once an indemnification contract is signed. *Graff v. Nieberg*, 233 F.2d 860, 863–4 (7th Cir.1956).

Accordingly, American cannot avoid being bound by the Plan by its late-blooming objection to its right to file a late claim which it clearly accepted in order to obtain rights under the confirmed Plan. It is bound by that decision, therefore bound by the Plan, and therefore lost all of its "claims" under the indemnification Agreement to the extent such claims would seek recovery from OakFabco corporate assets.

### Liability for Claims to Recover from OakFabco's Insurance was not Discharged Regardless of Whether any Claims Against OakFabco Assets were Discharged

It is well established that the discharge of a debtor's liability pursuant to 11 U.S.C. § 524 does not affect the liability of any other entity for the debt, including any insurance carriers. *In re Hendrix*, 986 F.2d 195, 197 (7th Cir.1993); *In re Shondel*, 950 F.2d 1301, 1306 (7th Cir.1991). In *Shondel*, the Seventh Circuit granted a claimant relief from the § 524 discharge injunction in order to pursue claims against the debtor's insurance carriers "where the relief would not deplete the debtor's assets or hinder the debtor's fresh start at the close of the bankruptcy proceeding" but rather "would only operate as a prerequisite for recovery against another entity." 950 F.2d at 1307.

Even where a debtor's liability to a claimant has been discharged, the bankruptcy court may modify the § 524 discharge injunction to permit a claimant to pursue a nominal claim against the debtor in order to establish liability upon which to base a claim against the debtor's insurers. *In re Pettibone Corp.*, 156 B.R. 220, 232

(Bankr.N.D.Ill.1993) (Schmetterer, J.) (granted modification of discharge injunction four years after plan confirmation), *aff'd*, 40 F.3d 175 (7th Cir.1994).

Regardless of whether OakFabco received a discharge of liability under the 1970 Agreements, this Court made no finding and issued no ruling in entering the Agreed Orders regarding the liability of OakFabco's insurance carriers to OakFabco or American Standard under the 1970 Agreements. American Standard is entitled to a declaratory judgment to this effect.

Section 2202 of Title 28 U.S.C. permits the court to grant further relief against an adverse party whose rights have been determined by a declaratory judgment in order to allow the successful party to implement the declaration. 28 U.S.C. § 2202. American Standard's motion to amend and supplement its fifth counterclaim prior to trial provided OakFabco with reasonable notice and the opportunity to object to such further relief.

■■■■ Under the Seventh Circuit decisions in *Shondel, Hendrix* and *Pettibone,* American Standard is permitted to pursue any claims it may have for coverage under OakFabco's insurance policies. Because under Illinois law and many other state laws American Standard does not have direct claims against the insurance carriers, *see e.g. Richardson v. Economy Fire & Cas. Co.,* 109 Ill.2d 41, 49–51, 92 Ill.Dec. 516, 485 N.E.2d 327, 331 (1985), American Standard seeks express relief from the § 524 discharge injunction to recognize its right to sue OakFabco as nominal party so as to reach insurance assets. It has sought this relief under its amended and supplemented fifth counterclaim.

American Standard's requested relief to allow it to pursue claims against any Oak-Fabco insurance coverage will not in any material way prejudice corporate OakFabco. American Standard seeks the same opportunity to obtain recovery from insurance coverage that was made available to other claimants in the debtor's bankruptcy case. Like them, American Standard will not recover damages from OakFabco assets.

Under cited authority, the prior efforts of American Standard to seek indemnification from insurance assets needed no permission of this Court. But since the issue was raised here, American Standard is entitled to adjudication: (a) declaration that the availability to American Standard of OakFabco's insurance policies covering Kewanee boilers has not thus far been altered, modified or discharged by any order of this Court; and (b) modification of the § 524 discharge injunction expressly to allow American Standard to pursue claims against insurance proceeds and against OakFabco as a nominal defendant in actions where direct suit of insurers is not permitted for the purpose of obtaining recovery from any available insurance proceeds.

### *Laches does not Bar American Standard from Pursuing Indemnification Claims under the 1970 Agreements*

One defense of OakFabco's pleaded to American Standard's counterclaims is laches, *i.e.,* that American Standard failed to assert claims for indemnification in earlier years and is thus estopped from asserting those claims now even to collect from insurance proceeds.

■■■■ Laches is an equitable affirmative defense which must be proved by the party raising it, *Hawxhurst v. Pettibone Corp. (In re Pettibone Corp.),* 40 F.3d 175, 181–82 (7th Cir.1994). A party claiming laches must demonstrate that any delay was unwarranted and caused prejudice to that party. *Morlan v. Universal Guar. Life Ins. Co.,* 298 F.3d 609 (7th Cir.2002). OakFabco has not met its burden of demonstrating prejudice or that its position has changed to its detriment as a result of

American Standard's purported delay in asserting indemnification claims.

American Standard did in fact assert claims under the 1970 Agreements following entry of the 1994 Agreed Orders in 1996 and again in 2001. OakFabco has been on notice of American Standard's position at least since 1996. OakFabco has demonstrated no action taken or not taken as a result of American Standard's delay in asserting more indemnification claims, or that to allow any claims now will cause some injury to OakFabco that could have been avoided if American Standard's additional claims had been presented earlier. Indeed, OakFabco and its insurers have routinely refused to cover claims presented to them, and it is disingenuous for them to claim harm from delay of American Standard in presenting more claims.

The insurance policies at issue were all in effect prior to filing of OakFabco's bankruptcy petition in 1986. What coverage exists will presumably be determined by the language of those policies. Oak-Fabco has not shown that any supposed delay in asserting claims by American Standard will adversely affect OakFabco in any coverage litigation that may be brought hereafter by the parties.

In contrast, should the Court preclude American Standard from pursuing indemnification from OakFabco, it will suffer clear and demonstrable prejudice by losing the benefit of its bargained-for right to indemnification from insurance assets without having had an opportunity to litigate any of its claims.

***American Standard is not in Contempt of the § 524 Injunction Based on its Good Faith Efforts to Obtain Payment from OakFabco for Valid Indemnification Claims under the 1970 Agreements and Owes no Damages***

 Even though this Court finds that all of American Standard's claims against OakFabco assets were discharged, American Standard's tender of claims to OakFabco never violated the § 524 discharge injunction, and it should not be held in contempt or subject to sanctions. To hold American Standard in contempt, OakFabco must show that American Standard acted in willful violation of the discharge injunction. To establish that the discharge injunction was violated, "the debtor must show that the creditor acted intentionally, with knowledge that his act was in violation of the automatic stay [or injunction]." *In re Bridges*, 1993 WL 98666 (Bankr.N.D.Ill.1993).

OakFabco has not met that burden. It and its insurers rejected American Standard's 1996 tender requesting defense of litigation asserting a discharge of the debt in bankruptcy. There is no indication in the record that American Standard, having been advised of OakFabco's position, followed up or commenced litigation against OakFabco to seek recovery from corporate assets in violation of the statutory injunction. In 2001, American Standard's second tender of defense of litigation was accompanied by a letter from American Standard's counsel explaining that American Standard had reviewed the assertion of discharge and found it wanting for reasons stated in the letter. Counsel's letter also made express reference to the possibility of insurance coverage for the claims, stating, "we believe that all of these cases are covered under your policies and that coverage is adequate...." Counsel invited further discussion on this subject. (JTE 19).

American Standard's tenders of claims for defense and indemnification were based on good faith belief and colorable arguments that Plan confirmation and the parties' settlement agreement did not dis-

charge ongoing indemnification claims based on the 1970 Agreements. *In re Forty–Eight Insulations, Inc.*, 54 B.R. 905, 909 (Bankr.N.D.Ill.1985) (claimant not subject to sanctions since he had a colorable argument that automatic stay did not enjoin him); *see also In re Ben Franklin Hotel Associates*, 186 F.3d 301 (3d Cir. 1999) (sanctions or findings of contempt against creditor who violated discharge injunction not warranted where creditor had colorable claim against debtor). It is remarkable for OakFabco to have argued that no good faith issue on that point existed despite state court rulings against it and its knowing failure to schedule American Standard as a creditor prior to Plan confirmation. Moreover, long standing authority permitting American Standard to assert claims against debtor as a nominal party for purpose of collecting from insurance assets has been clear in this Circuit. *International Business Machines v. Fernstrom Storage & Van Company (In re Fernstrom)*, 938 F.2d 731, 734–35 (7th Cir.1991); *In re Shondel*, 950 F.2d 1301, 1306 (7th Cir.1991). *See also* 11 U.S.C. § 524(e). In light of such authority, the statutory injunction under § 524 did not bar tenders of defense, and the assertions of contempt for the exercise of American Standard's rights to do so border on the frivolous.

As American Standard had a good faith and colorable basis for asserting that there had been no discharge, and because it had every right to seek recovery from insurance, OakFabco has not proven any violation of the discharge injunction let alone a willful violation. OakFabco's claim for contempt sanctions will therefore be denied.

Moreover, no damages were proven or can be due from the American Standard action in tendering defenses for indemnification by the insurers.

## CONCLUSION

### American Standard

The case will be set on notice for both counsel to tender proposed judgment orders in accord with this Opinion.