In re John Howard PAYNE, Debtor.

John Howard Payne, Plaintiff,

v.

United States of America, Defendant.

Bankruptcy No. 97 B 39766.
Adversary No. 01 A 00342.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 2, 2004.

S. Ira Miller, Chicago, IL, for Plaintiff.

Craig K. Weaver, U.S. Dept. of Justice, Tax Div., Washington, DC, for Defendant.

Mayer Y. Silber, Office of Chief Counsel, IRS, Joel Nathan, Office of United States Attorney, Chicago, IL, for Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

The instant adversary relates to the Chapter 7 bankruptcy petition of John Howard Payne ("Payne"). Plaintiff Payne seeks a declaration that his liability for overdue taxes due for 1986 was discharged through his bankruptcy filing and also seeks damages for willful violation of the discharge injunction under 26 U.S.C. § 7433(e). The Defendant United States of America ("United States" or "Government"), on behalf of the Internal Revenue Service ("IRS" or "Agency"), contests dischargeability of the 1986 tax debt which Payne seeks under 11 U.S.C. § 523(a)(1)(B)(ii). It first denies that Payne ever filed anything for that tax year, alternatively asserts that if he did file anything it was not a tax "return" under § 523(a)(1)(B) that was filed before the agency assessed tax liability for 1986, and that the lateness of any filing renders the tax debt nondischargeable.

Following trial, the Court now makes and enters the following Findings of Fact and Conclusions of Law, pursuant to which judgment is separately entered in favor of Payne.

### CASE HISTORY

Payne scheduled the IRS as a creditor, but despite notice of the Chapter 7 bankruptcy case, the Government did not participate. After entry of a discharge order generally discharging Payne's debt, the IRS served him with its notice of intent to levy his income and assets. Pl.'s Tr. Exh. 16.[1] Payne then moved to reopen his bankruptcy case and sought by motion to enjoin the IRS from violating the discharge order. That motion was stricken without prejudice to Payne filing an adversary complaint as required by Fed. R.Bank.P. 7001. In this Adversary proceeding, Payne seeks declaration that his 1986 tax debt was discharged, but not an injunction. Alternatively, he claims that the tax assessment was in error as to calculations. The United States moved for summary judgment. For reasons discussed in an earlier Memorandum Opinion, *Payne v. United States of America (In re Payne)*, 283 B.R. 719 (Bankr.N.D.Ill.2002),

---

1. "Pl.'s Tr. Exh." refers to Payne's exhibits admitted at trial. "Def.'s Tr. Exh." refers to the United States IRS' exhibits admitted at trial.

that motion was denied. Therefore, the case went to trial, and the following Findings of Fact and Conclusions of Law are made and entered.

## FINDINGS OF FACT

Findings of Fact are based on evidence presented at trial, and stipulation of the parties filed herein as to uncontested facts.

1. John Howard Payne filed a petition for relief under Chapter 7 of the Bankruptcy Code on December 31, 1997.

2. Payne scheduled the United States Internal Revenue Service as a creditor for unpaid income taxes for the years 1983 through 1991. Although properly notified of Payne's bankruptcy case, the IRS did not file a claim or an adversary proceeding to determine dischargeability of any of those taxes. Payne received a general bankruptcy discharge order entered in 1998. (Stipulation ¶¶ 2 and 3.)

3. For the calendar year 1986, Payne received $155,604.77 in wages, from which $44,520 was withheld for federal income taxes and $3,007 was withheld for social security taxes. Payne's Form 1040 Federal Income Tax Return for the 1986 tax year was due on or before April 15, 1987.

4. Payne did not file timely tax returns for tax years 1983 through and including 1990, prompting the IRS to begin on or about November 6, 1989 an investigation to determine Payne's tax liability.

5. On or about December 31, 1990, a delegate of the Secretary of the Treasury made an assessment against the Plaintiff for unpaid federal income tax for the 1986 tax year in the amount of $64,472 plus statutory interest and penalties (Stipulation ¶ 10.) Payne did not establish at trial that the assessment was erroneously calculated.

6. Payne did not petition the Tax Court for a redetermination of the IRS's assessment.

7. In March 1992, approximately five years prior to his bankruptcy filing, Payne mailed his Form 1040 income tax returns for all of the tax years 1983 through 1990 without payment (Stipulation ¶¶ 11 and 12). In doing so Payne attempted to advise the IRS of his tax liabilities and effectuate offers to compromise those liabilities. He used an accounting firm to prepare those returns. (Pl.'s Tr. Exh. 13, p. 2.) The 1986 Form 1040 had Payne's W-2 and other documentation attached. The Secretary of the Treasury made assessments for Payne's unpaid taxes for all the foregoing years except 1986 from the late-filed returns.

8. The IRS levied Payne's wages in November, 1992. In December 1992, Payne submitted three offers at different times in varying amounts ($100,000, $124,000 and $99,500) to resolve his tax debt for all the foregoing tax years. Payne listed his inability to pay as the reason he could not satisfy the full amounts due. Pl.'s Tr. Exh. 3. In conjunction with each settlement offer, he tendered a down payment of $1,000. The IRS eventually rejected all those offers to compromise, but in negotiating the offers the IRS did not dispute that a Form 1040 had been filed by Payne for the year 1986.

9. The United States acknowledges receipt of Payne's offers to compromise, his payments, and late Form 1040 tax returns except for the year 1986, and acknowledges the dischargeability of his tax debt for each tax year 1983 through 1990, except for the year 1986. Def.'s Brief ¶ 20 at 3. The 1986 taxable year is the only year in dispute.

10. In the taxable year of 1986, Payne received $155,604.77 in wages, and amounts of $44,520.00 and $3,003.00 were

withheld, respectively, for federal income taxes and social security tax. Because of the withholdings, Payne received a credit of $44,520.00 against the amount of income tax assessed.

11. In 1999, the IRS sent Payne notice stating that the 1986 tax return had not been received.

12. In 2001, Payne received notice that the IRS again intended to levy his assets and income for failure to pay the 1986 tax debt. To forestall the IRS's levy, Payne moved to reopen his bankruptcy case and filed the instant Adversary Complaint. Pl.'s Tr. Exh. 16.

13. Although the Complaint prays for damages, no evidence was offered as to any specific economic damages.

14. Further fact statements contained in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

### JURISDICTION

Jurisdiction lies under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This proceeding is referred here by the District Court under the standing referral procedure in District Court Internal Operating Procedure 15(a). Venue is proper in this District under 28 U.S.C. § 1409(a).

### DISCUSSION

Payne's Adversary Complaint seeks both a declaration that his 1986 tax debt was discharged, and also for damages under 26 USC § 7433, provisions of the Internal Revenue Code permitting recovery of damages against the United States for willful violations of the automatic stay or discharge injunction.

Payne alleges that the IRS violated the discharge injunction since it was aware by bankruptcy notice of his bankruptcy and discharge but nonetheless proceeded to levy his assets. Am. Compl. ¶ 5. The IRS justifies its collection effort, maintaining that Payne's 1986 tax liability is non-dischargeable under 11 U.S.C. § 523(a)(1)(B)(i). Answ. at 1.

The granting of a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).

■ The discharge injunction applies only to dischargeable debts. *Collier on Bankruptcy* ¶ 524.02 at 524–12 (15th rev. ed.2000); *Pettibone Corp v. United States (In re Pettibone Corp.)*, 161 B.R. 960, 964 (N.D.Ill.1993) (holding that because the debtors obligations were not discharged, section 524 did not apply).

Accordingly, it must first be determined whether the 1986 tax debt was discharged, and if so whether the statutory discharge injunction was willfully violated.

### I. THE 1986 TAXES WERE DISCHARGED

#### A. Late filings of the 1986 Tax Return

The first basis for the Government's position is that the IRS has no record of ever receiving the Plaintiff's 1986 Form 1040 tax return for 1986. If Payne failed to file a tax return for 1986, that would except the 1986 debt from discharge. 11 U.S.C. § 523(a)(1)(B)(i). The Government argues that because it cannot locate the tax return for 1986 that Payne says he filed along with returns for other years, and Payne did not establish that the return was delivered through certified or registered mail as allowed by 26 U.S.C. § 7502(c); therefore it contends that Payne did not file

anything. Defendant moved for summary judgment on that basis, but that motion was denied by opinion holding that triable issue of fact existed over whether Payne filed his return. *See In re Payne,* 283 B.R. at 725.

■ The trial record contains evidence supporting Payne's contention of filing: First, there is Payne's retained copy of the 1986 Form 1040 signed by his accountant preparer and dated by the preparer February 10, 1992. This corroborates Payne's testimony that the 1986 return was prepared and filed in March 1992. Pl.'s Tr. Exh 13. Second, all the returns were prepared by an accounting firm and mailed by Payne to the IRS. Third, the Government concedes receipt of the late filed tax returns for all other years that were filed at the same time as the 1986 return. The foregoing evidence raises a rebuttable presumption of receipt and delivery. *In re Nimz Transportation, Inc.,* 505 F.2d 177, 179 (7th Cir.1974).

Evidence supporting the Government's assertion of non-filing consists of an Internal Revenue Service certificate of official record indicating that as of November 6, 1989 the Agency had not received the 1986 return and a letter dated April 13, 1999 to Payne stating that the 1986 tax return had not been received. IRS's Exh. A; Pl.'s Tr. Exh. 15.

However, Payne established that he filed the 1986 return together with returns for other years by mailing all of those documents to the IRS, and the Government acknowledges receiving all returns other than the 1986 return. The United States thereby acknowledged receipt of Payne's mailing or series of mailings of returns for other years. Absent evidence of improper mailing (e.g. lack of proper postage or wrong address or improper delivery), the preponderance of evidence supports a finding that Payne caused his accountants to prepare all of his delinquent returns, and then he filed them, filing the 1986 return along with the others. To hold otherwise would be to find that when the professional preparer did eight returns, Payne only sent in seven for filing, but not the 1986 return. Such finding would be unrealistic in that the IRS received all other returns sent. Therefore, it is still presumed that Payne filed the 1986 return in March of 1992, that the IRS received the 1986 form 1040 along with the returns for other years, and that such presumption has not been rebutted.

**B.** ***The 1986 Tax Return Constituted a Return under Section 523 of the Bankruptcy Code***

11 U.S.C. § 523(a) excepts from a Chapter 7 discharge debt:

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

Since the 1986 return was filed more than two years before Payne filed in bankruptcy, the Government focuses on section 523(a)(1)(B)(i), arguing that as a matter of law the late-filed Form 1040 for 1986 was not a "return" that was "filed" even if actually received, because it was sent in

after the IRS had assessed the tax due for 1986.

The Tax Code does not define the term "return" or what the word encompasses, or set out how accurate and thorough or complete a document must be in order to qualify as a return. Collier on Bankruptcy ¶ 523.07[3][a] at 523–36 (15th ed. rev.2001). In the absence of statutory guidance, Courts generally apply a four-part test of what a "return" is, derived from two Supreme Court cases, *Germantown Trust Co. v. Commissioner*, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940), and *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934). Those decisions accepted the test from a prior Tax Court opinion ("*Beard* test"):

> (1) The document must purport to be a return, (2) the document must be executed under penalty of perjury, (3) contain sufficient data to allow calculation of the tax and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law.

*Beard v. Commissioner*, 82 T.C. 766, 777–778, 1984 WL 15573 (1984), *aff'd* 793 F.2d 139 (6th Cir.1986).

Although the Seventh Circuit Court of Appeals has not had occasion to decide whether to accept the *Beard* test, opinions in the Fourth, Sixth, Ninth, and Tenth Circuits have done so. *See e.g., Moroney v. U.S. (In re Moroney)*, 352 F.3d 902 (4th Cir.2003); *U.S. v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029 (6th Cir.1999); *U.S. v. Hatton (In re Hatton)*, 220 F.3d 1057, 1060–1061 (9th Cir.2000); *Savage v. Internal Revenue Service (In re Savage)*, 218 B.R. 126, 132 (10th Cir. BAP 1998). Bankruptcy opinions in this Circuit have also adopted the *Beard* test. *Crawley v. U.S. (In re Crawley)*, 244 B.R. 121 (Bankr. N.D.Ill.2000); *Miniuk v. U.S. (In re Mi-*

*niuk)*, 297 B.R. 532 (Bankr.N.D.Ill.2003). The United States had accepted the application of that test to this case, and it is accepted in this Opinion as proper.

■ The fourth prong, requiring a good faith inquiry ("honest and reasonable attempt to satisfy the requirements"), is the only prong in dispute. The United States argues that a document filed after the Agency has assessed a taxpayer's liability cannot "represent a honest and reasonable attempt to satisfy the requirements of the tax law," because such filings serve no tax purpose under the Internal Revenue Code. It contends that tax return forms filed after assessment no longer qualify as returns because they are too late to provide the IRS with the information necessary to calculate tax due.[2] *See* 26 U.S.C. § 6211 et seq.

The United States also argues that the construction of the term "return" should be consistent with the concepts that underlie the federal taxation scheme, and "there is no reason to presume the Bankruptcy Code sought to encompass as a return any document, form, paper or the like that would not qualify as a return under the applicable tax law." IRS Br. at 9–11.

The United States argues that any possible usefulness of a post assessment filing is far outweighed by its disruption of the federal tax reporting system, a system dependent on substantial timely voluntary compliance. When taxpayers fail to submit a return, they force the IRS to expend costly resources to investigate and calculate taxes based on information from sources other than the taxpayer. If large numbers of taxpayers fail to comply voluntarily with the tax laws, "the administra-

---

**2.** The taxpayer may contest and forestall enforcement of the assessment by petitioning the Tax Court. 26 U.S.C. § 6213(a), but Payne did not do so.

tive burden ... would be overwhelming and unworkable." IRS Br. at 7.

The United States relies on *Hindenlang*, 164 F.3d 1029 at 1033 (6th Cir.1999). In *Hindenlang*, the debtor filed Forms 1040 tax returns after the IRS had already made an independent assessment of his tax liability. *Ibid.* at 1031.Upon filing for bankruptcy, Hindenlang claimed that the debt was dischargeable. The opinion in *Hindenlang* held "as a matter of law that a form 1040 is not a return if it no longer serves any tax purpose or has any effect under the Internal Revenue Code." *Ibid.* at 1034.

## C. *The Bankruptcy Code Does Not Support Hindenlang's Anaylsis*

*Hindenlang's* holding derived from analysis of post assessment filings under the Internal Revenue Code. Such documents, the opinion reasoned, have no tax purpose because they do not affect the IRS's assessment or enforcement powers nor absolve a debtor from civil liability. *Hindenlang* also concluded that permitting post assessment filings creates an "unjustifiable inconsistency in the law," since late returns filed by debtors could be discharged in bankruptcy, a privilege not available to tax payers outside of bankruptcy. Under *Hindenlang*, to deny a debtor a discharge the IRS simply must prove that it served a debtor with a deficiency notice and calculated liability prior to the late filing of a tax return for the year in issue. However, the *Hindenlang* opinion would remove all consideration of the debtor's intent from the *Beard* test and establish a bright line rule barring discharge of tax debt where returns are filed post assessment.

The issue of whether submission of tax return documents filed after the IRS has assessed a taxpayers deficiency ("post assessment filing") constitutes a "return" under § 523(a)(1)(B)(i) and (ii) has produced conflicting opinions.

Most opinions on the issue have followed *Hindenlang*. *See e.g. In re Sgarlat,* 271 B.R. 688, 696 (Bankr.M.D.Fla.2001); *In re Hetzler,* 262 B.R. 47, 54 (Bankr.D.N.J. 2001); *In re Walsh,* 260 B.R. 142, 151 (Bankr.D.Minn.2001); *In re Pierchoski,* 243 B.R. 267, 271 (W.D.Pa.1999); *In re Prince,* 240 B.R. 261, 263–64 (Bankr. N.D.Ohio 1999). The Fourth Circuit agreed with *Hindenlang* but refused to hold as a matter of law that any post assessment filing cannot constitute a return. *See In re Moroney,* 352 F.3d 902.

Other opinions have rejected *Hindenlang* based primarily on principles of statutory construction of the Bankruptcy Code. *In re Savage,* 218 B.R. at 132; *Crawley,* 244 B.R. at 121.[3]

The United States urges this Court to follow *Hindenlang* and hold as a matter of law that any post assessment filing can never quality as a "return." The problem with that argument is that it seeks to engraft onto § 523(a)(1)(B)(ii) of the Bankruptcy Code a distinction that is not stated

---

**3.** The United States argues that opinions rejecting *Hindenlang* are no longer valid precedent, suggesting that they relied on *U.S. v. Nunez (In re Nunez),* 232 B.R. 778 (9th Cir. BAP 1999), which was overturned by a Ninth Circuit opinion in *U.S. v. Hatton,* 220 F.3d at 1061.

*Hatton* is distinguishable and inapplicable. That opinion was based on that debtor's conduct, not because the court adopted *Hindenlang's per se* rule. *Klein v. U.S. (In re Klein),* 2003 Bankr.LEXIS (Bankr.S.D.Fla. January 13, 2003); *Rushing v. U.S. (In re Rushing),* 273 B.R. 223, 227 (Bankr.D.Ariz.2001) ("[h]ad the *Hatton* court adopted *Hindenlang*, it would not have needed to consider the Debtor's subjective intent post assessment. The court would simply have determined that the debtor's post assessment submissions, could not as a matter of law, constitute returns under § 523(a)(1)(B)").

there. If Congress desired to limit the effect of that provision by inserting a distinction for post assessment filing, it could have done so. As the opinion in *Crawley*, 244 B.R. at 127 correctly observed:

"[Congress] easily could have conditioned discharge of tax debt on whether a return was filed prior to assessment ... Congress utilized assessment as a trigger for other time periods in the Bankruptcy Code. See 11 U.S.C. § 507(a)(8)(A)(ii) and (iii) (priority qualifications for certain allowed unsecured claims of governmental units)."

It is a commonly followed rule of statutory construction that when Congress includes particular language in one provision but omits it in another, it is presumed to have acted intentionally and purposely. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

Furthermore, while *Hindenlang* looked to the Internal Revenue Code to determine an outcome under the Bankruptcy Code, the Internal Revenue Code does not define "return," and no statutory authority was cited for the conclusion that the Internal Revenue Code trumps the Bankruptcy Code when deciding an issue under the latter Code. The Government's policy-based rationales regarding the disruption of post assessment filings on the tax system cannot result in a strained interpretation of the Bankruptcy Code to disregard or expand upon the statutory language.

Declining to follow *In re Hindenlang* does not mean the Bankruptcy Code gives bankruptcy debtors freedom to evade their reporting requirements. The good faith inquiry under the *Beard* test requires a determination of the debtor's honest and reasonable intent at the time of the late filing. *Crawley*, 244 B.R. at 121.

■ In the context of evidence that was presented, the mere failure to file a timely return, without additional evidence, is insufficient to prove the absence of good faith. *Nunez*, 232 B.R. at 783–784. Payne's late Form 1040 tax return for 1986 was complete on its face. Moreover, the conceded filing of returns for the other years and offers of substantial cash settlement of his tax obligations for all years including 1986 affirmatively showed his good faith. Therefore, bad faith cannot be inferred from evidence in this record, and the filing of 1986 tax return papers by Payne was his honest and reasonable attempt to satisfy requirements of the tax laws.

It should also be noted that Congress has provided the Government with authority to pursue recalcitrant taxpayers in 11 U.S.C. § 523(a)(1)(C). That provision excepts from discharge conduct by a debtor calculated willfully to evade or defeat the payment of taxes. If evidence had warranted, the United States could have filed an Adversary Complaint seeking to obtain relief under that provision. *See Woods v. Internal Revenue Service (In re Woods)*, 285 B.R. 284, 291 (Bankr.S.D.Ind.2002). However, it did not do so, and no inference of any intent by Payne to evade taxes willfully can be made from evidence in this case to support a bad faith argument.

## II. THE IRS DID NOT WILLFULLY VIOLATE THE DISCHARGE INJUNCTION AND NO DAMAGES WERE PROVEN

■ Section 26 U.S.C. § 7433(e) of Title 26 U.S.C. provides, in connection with any collection of Federal tax with respect to a taxpayer, that if any officer or employee of the Internal Revenue Service willfully violates any provision of §§ 362 (relating to automatic stay) or 524 (relating to effect of discharge) of Title 11, United States Code,

such taxpayer may petition the bankruptcy court to recover damages against the United States.

Willful is not defined in § 7433(e), and no accompanying legislative history has been found. Opinions relating to bankruptcy cases considering damages under § 7433(e) use bankruptcy standards to determine willful violations of the discharge injunction, since no standards are established in the Internal Revenue Code. See *Stewart v. United States*, 2000 Bankr.LEXIS 1253 (Bankr.S.D.Ga. July 10, 2000) (looking to bankruptcy law to determine § 7433 violations); *Johnson v. Commissioner*, 2003 U.S. Dist. LEXIS 19691 (D.S.Car. August 4, 2003) (same). Under the reasoning of those opinions, willful violations of the discharge injunction would only require proof that a party acted intentionally, with knowledge that acts were in violation of the statutory injunction. *Oakfabco, Inc. v. Am. Std., Inc. (In re Kewanee Boiler Corp.)*, 297 B.R. 720, 736 (Bankr.N.D.Ill.2003). Since the IRS attempted to levy Payne's income despite notice to it of his bankruptcy proceeding and discharge (from it being scheduled and receiving notices of his case), under that standard it is argued that the IRS "willfully" violated the discharge injunction.

But in this case it was not shown that any IRS officer knew that Payne had filed a late return because the IRS had no record of it being filed. Therefore, it cannot be said that at the time of its collection efforts the IRS knew that the tax debt had been discharged under § 523(a)(1)(B)(ii) and acted willfully in the face of such knowledge.

Moreover, Payne has not demonstrated any actual and specific economic damages, and therefore could not in any event recover monetary damages because attorney's fees charged by his counsel are not recoverable as damages or costs. 26 CFR 302.7433–1(b)(2)(i)(D) and 301.7443–2(b)(2).

## CONCLUSION

The Government's arguments that Payne's post assessment filing of Form 1040 for 1986 was not filed at all, or if filed cannot constitute a "return," are rejected. The evidence demonstrated Payne's good faith when he filed his 1986 Form 1040 and afterwards. Therefore, the Government's argument that the exception to discharge in § 523(a)(1)(B)(i) applies to the Debtor's 1986 tax debt has failed. A declaratory judgment in Plaintiff's favor under § 523(a)(1)(B)(ii) will therefore be separately entered, though Payne will recover no damages and each party will bear his and its own costs.