**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Cornelius KNOTTNERUS,
Defendant–Appellant.**

No. 97–2939.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1998.

Decided March 17, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied April 15, 1998.

James M. Conway, Office of the United States Attorney, Criminal Division, Chicago, IL, Gil M. Soffer (argued), Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Daniel T. Hartnett (argued), Martin, Brown & Sullivan, Chicago, IL, for Defendant–Appellant.

Before FLAUM, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

By his own admission, Cornelius Knottnerus "fell under the influence of a tax protest movement" and failed to file income tax returns for the years 1987 through 1993. He tried to avoid criminal punishment for this misdeed by seeking the protections of the Internal Revenue Service's Voluntary Disclosure Policy in 1993. Under this program,

the IRS agrees to send a recommendation against criminal prosecution for tax evasion to the Department of Justice (DOJ) Tax Division if a delinquent taxpayer voluntarily comes forward to pay overdue taxes and penalties.[1] Knottnerus contends that he complied with the program's requirements, but that the DOJ nevertheless commenced a prosecution against him for tax evasion at the IRS's recommendation. He claims that the IRS's failure to recommend nonprosecution violated its own internal rules, thereby violating his due process rights, and that his indictment therefore should have been dismissed. The district court refused to dismiss the indictment, and we affirm that decision.

Cornelius Knottnerus intentionally did not file tax returns for the years 1987 through 1993. During this period, Knottnerus received almost $369,000 in net taxable income from his residential construction business; he failed to pay approximately $116,000 in taxes due on this income. A grand jury began investigating Knottnerus's tax evasion in February 1993. The IRS assigned Special Agent Darrick Rhymes to the investigation.

Special Agent Rhymes traveled from Chicago to Knottnerus's home in Bristol, Wisconsin to photograph the residence on July 21, 1993. Knottnerus noticed this activity around his house, and he went over to greet the mysterious photographer. The two men shook hands as Knottnerus asked, "Can I help you?" Special Agent Rhymes thereupon identified himself as an IRS representative. At this point, Knottnerus said, "Okay, hold on," walked to a truck on his property, climbed into the truck, and sped away from the premises. Special Agent Rhymes ran to his car and called the IRS's base station in Chicago to report this contact with Knottnerus; Rhymes left nearly fifteen minutes later when it became apparent that Knottnerus would not be returning to continue their conversation.

Knottnerus contacted an attorney approximately one week after evading the IRS in this encounter. Through his attorney, Knottnerus informed the IRS that he wished to participate in the Voluntary Disclosure program. Knottnerus sent a letter to the IRS formally stating his desire to participate in the program. Rather than accepting him into the program, the IRS sent him a letter dated August 31, 1993, informing him that he was already under criminal investigation for tax evasion and failure to file tax returns. Knottnerus's counsel attempted to dissuade the IRS from this course of action in at least two phone calls, but the IRS maintained that Knottnerus did not qualify for the voluntary disclosure program. The district court agreed with the IRS that Knottnerus did not meet the program's eligibility requirements. Knottnerus pleaded guilty to one count of tax evasion,[2] but he preserved his right to appeal the denial of his motion to dismiss the indictment.

In order to establish that his indictment violated his due process rights, Knottnerus must convince us that he qualified for the protections offered by the IRS Voluntary Disclosure Policy. This program is designed to reduce enforcement costs and maximize tax revenue.[3] The IRS has enthusiastically described the program in numerous public pronouncements in language similar to that used in the following news release: "[T]axpayers who come forward voluntarily to file their delinquent returns should not fear criminal prosecution. 'The IRS will not recommend criminal prosecution of any taxpayer who comes forward, makes a true voluntary disclosure, and files an accurate tax return' ...." IRS News Release, IR92–94, Sept. 30, 1992 (quoting IRS Commissioner Shirley Peterson). The IRS has noted its "longstanding practice" of not recommending criminal prosecution of delinquent taxpayers

---

1. Most criminal tax prosecutions originate with IRS recommendations to the DOJ. The DOJ, however, makes its own decisions on whether to prosecute cases recommended by the IRS.

2. The district court sentenced Knottnerus to five years of probation, including six months of home confinement, as well as other sanctions.

3. For a discussion of the evolution and history of this policy, see *United States v. Tenzer*, 127 F.3d 222, 226 (2d Cir.1997).

who "voluntarily file, or make arrangements to file, before being notified they are under criminal investigation." IRS Publication 1715 ("It's Never Too Late!"), January 1993.[4]

■ The IRS has enumerated five eligibility requirements for participating in the voluntary disclosure program. The taxpayer must have satisfied all of the following conditions: .

    a. informed the IRS that he/she has not filed tax returns for one of [sic] more taxpayer periods;

    b. had only legal source income, in other words no part of the income was earned from activity which is illegal under federal or state law;

    c. *made the disclosure prior to being contacted by the IRS—in this context, "contact by the IRS" means that the taxpayer and/or the taxpayer's representative has received notification by the IRS by a telephone call, letter or personal visit that the taxpayer is under criminal investigation;*

    d. either filed a true and correct tax return or cooperated with the IRS in ascertaining the correct tax liability; and

    e. either paid in full the amount due or, in those situations where the taxpayer was unable to make full payment, made bona fide arrangements to pay.

IRS News Release, IR–92–114, Dec. 7, 1992 (emphasis added). The issue in this case is whether Knottnerus's encounter with Special Agent Rhymes constituted, under these guidelines, a notification by "personal visit that the taxpayer is under criminal investigation."

■ We conclude that Special Agent Rhymes's personal visit to Knottnerus disqualified him from the voluntary disclosure program. On a factual question such as this, we review the district court's refusal to dismiss the indictment for an abuse of discretion. *See United States v. Cichon,* 48 F.3d 269, 274 (7th Cir.1995), *cert. denied,* 516 U.S. 1111, 116 S.Ct. 908, 133 L.Ed.2d 840 (1996), *and overruled on other grounds, United States v. Baldwin,* 60 F.3d 363 (7th Cir.1995); *see also United States v. Noriega,* 117 F.3d 1206, 1211 (11th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 1389, 140 L.Ed.2d 648 (1998). *Compare United States v. Lee,* 72 F.3d 55, 57 (7th Cir.1995) (giving plenary review to a district court's refusal to dismiss an indictment based on an issue of law). The district court found that "a reasonable inference may be drawn that Knottnerus was aware of the IRS investigation before he applied for the program." We agree that, under the facts of this case, Knottnerus received adequate notification that he was under criminal investigation by the IRS, and that the court therefore did not abuse its discretion by concluding that Knottnerus failed to satisfy the requirements of the Voluntary Disclosure Policy.

The touchstone of the Voluntary Disclosure Policy is, as its name suggests, voluntariness. Thus, in order to qualify for the program, a taxpayer must come forward "prior to being contacted by the IRS". The IRS has promulgated a definition of "contact" in this context: a telephone call, letter, or personal visit from the IRS that notifies the taxpayer that he is under criminal investigation. After the grand jury had initiated

---

4. The Internal Revenue Manual, however, adopts a less absolute posture. The Manual, provided to IRS Special Agents, advises that "a voluntary disclosure will be considered with all other factors in the case in determining whether criminal prosecution will be recommended." INTERNAL REVENUE MANUAL, SPECIAL AGENTS HANDBOOK § 342.142(1). It goes on to note:

    A voluntary disclosure will not of itself guarantee immunity from prosecution, yet a voluntary disclosure may result in no prosecution recommendation. However, since the IRS's application of the voluntary disclosure practice does not automatically result in immunity from criminal prosecution, taxpayers should be advised that they cannot rely on the fact that others may not have been prosecuted.

*Id.* § 342.142(2).

    The Manual is consistent with the caveats placed in some of the IRS's news releases:

    The IRS' voluntary disclosure practice is not an amnesty or a grant of immunity from prosecution. While the IRS will not assure that it would never, under any circumstances, recommend the criminal prosecution of an individual who comes forward voluntarily to report the failure to file one or more tax returns, the IRS' practice has been *not* to do so where the person [meets the program's eligibility requirements].

IRS News Release, IR–92–114, Dec. 7, 1992.

its criminal investigation, Special Agent Rhymes made a personal visit to Knottnerus's residence in July 1993 and began photographing the house; Knottnerus greeted Rhymes, and Rhymes identified himself as an IRS representative. At this point, Knottnerus fled the scene, and the conversation unexpectedly ended. If, however, Knottnerus had not run away so abruptly, the conversation would have naturally turned next to Special Agent Rhymes's reason for taking pictures of the house; Knottnerus then would have learned that he was under criminal investigation for tax evasion and failure to file tax returns. Instead, he now seeks to use his flight as a defense, claiming that Special Agent Rhymes never formally notified him that he was under criminal investigation.

Principles of equity and common sense preclude us from construing the "contact" requirement so narrowly. Knottnerus's hasty retreat was the only reason that Special Agent Rhymes did not have a chance to tell him directly that he was under criminal investigation for tax evasion. Indeed, the threat of some disciplinary sanction was the impetus for Knottnerus's flight in the first place; the IRS does not make social visits, and the district court found that Knottnerus knew why the IRS was taking pictures of his residence. Conscious avoidance cannot absolve one of criminal liability in other contexts, *see, e.g., United States v. Wilson*, 134 F.3d 855, 868 (7th Cir.1998), and, because Knottnerus evaded an IRS representative investigating his activities, he cannot claim that he was never "contacted" by the IRS regarding his criminal investigation.

 We therefore conclude that the district court did not abuse its discretion in holding that Knottnerus failed to qualify for the Voluntary Disclosure Policy. For this reason alone, the IRS did not violate his due process rights in failing to recommend against prosecution.[5]

---

5. Knottnerus's due process claim fails on its own terms because we conclude that he did not qualify for the Voluntary Disclosure program. Our holding need not reach further than this, but we note that even if he had qualified for the program, his due process claim would be highly dubious. An agency's failure to follow its own regulations does not rise to the level of a constitutional violation unless the regulations themselves are compelled by the Constitution. *See United States v. Caceres*, 440 U.S. 741, 749–52, 99 S.Ct. 1465, 1470–72, 59 L.Ed.2d 733 (1979); *Bridges v. Wixon*, 326 U.S. 135, 152–53, 65 S.Ct. 1443, 1451–52, 89 L.Ed. 2103 (1945); *Yang v. I.N.S.*, 109 F.3d 1185, 1195 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997).