**UNITED STATES of America,**
**Appellant,**

v.

**Joseph Michael KLEIN, Appellee.**

**No. 03–20764–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

June 10, 2004.

Deborah M. Morris, Fort Wayne, IN, Counsel for Appellant.

James S. Caris, Hollywood, FL, Counsel for Appellee.

### *ORDER VACATING BANKRUPTCY COURT'S FINAL JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS*

ALTONAGA, District Judge.

**THIS CAUSE** is before the Court upon Appellant, United States of America's Appeal from the Final Judgment entered by the United States Bankruptcy Court for

the Southern District of Florida (the "Bankruptcy Court") on January 14, 2003, in the cases styled *In re Joseph Michael Klein*, Case No. 98–13391–BKC–RAM, and *Joseph Michael Klein v. United States of America*, Adv. No. 01–1487–BKC–RAM–A. The Bankruptcy Court entered Final Judgment in accordance with a January 13, 2003 ruling in *Joseph Michael Klein v. United States of America*, granting Plaintiff, Joseph Michael Klein's Motion for Summary Judgment and denying Defendant, United States of America's Motion for Summary Judgment. The adversary proceeding concerned whether the Debtor's federal income tax liabilities for the years 1990 and 1991 are excepted from discharge in bankruptcy. The Court has reviewed the briefs submitted by the parties and heard oral argument on March 12, 2004.

The Appeal involves the following issues identified, without objection by the Appellee, in the Appellant's Brief:

1. Whether the Bankruptcy Court erred in determining that Plaintiff, Klein's Forms 1040 submitted for the years 1990 and 1991 were tax returns for purposes of 11 U.S.C. § 523(a)(1)(B), and therefore not excepted from discharge?

2. Whether the Bankruptcy Court erred in failing to shift the burden of proof to Plaintiff, Klein, once the Defendant, United States, established that Substitutes for Return were prepared prior to submission of any Forms 1040?

3. Whether the Bankruptcy Court erred in requiring the Defendant, United States, to prove a lack of good faith by plaintiff in submitting his Forms 1040 for the years 1990 and 1991?

4. Whether the Bankruptcy Court erred in applying a subjective standard to determine whether Plaintiff, Klein's Forms 1040 submitted for the years 1990 and 1991 were tax returns for purposes of 11 U.S.C. § 523(a)(1)(B)?

(Br. for Appellant at 1–2).

■ A district court reviews a bankruptcy court's entry of summary judgment *de novo. In re Optical Techs., Inc.*, 246 F.3d 1332 (11th Cir.2001). That review is circumscribed by the record, and "[t]he record on appeal shall include the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court." Fed. R. Bankr.P. 8006. Among the items designated by the parties are the United States' Motion for Summary Judgment, Memorandum and exhibits; Klein's Motion for Summary Judgment, Memorandum and exhibits; Klein's Response to United States' Motion for Summary Judgment; and Klein's deposition transcript. The United States' Response to Klein's Motion was not designated.

## I. STATEMENT OF FACTS

The following facts are not in dispute. The Debtor and Appellee, Joseph Michael Klein ("Klein"), failed to file his federal income tax returns for the years 1990 and 1991 when they were due, because of personal problems.[1] After a determination that Klein had not filed an income tax return for the year 1990, the Internal Revenue Service ("IRS") prepared a substitute for return ("SFR") on August 30, 1992. After Klein failed to respond to an IRS 30–day letter, the IRS sent Klein a notice of deficiency. Klein did not file a petition in Tax Court. As a result, on September

---

1. Despite his personal problems, Klein admittedly managed to keep his job in advertising sales at Channel 39 in Hollywood, Florida, pay his bills, and keep his cocaine usage unknown to his family and co-workers. (Klein Dep. at 18–21).

20, 1993, the IRS proceeded with an assessment of tax against Appellee in the amount of $11,066.00. A Notice of Balance Due was issued on September 20, 1993, and a Notice of Intent to Levy was issued on October 11, 1993.

The IRS proceeded similarly for the year 1991 and prepared another SFR on July 26, 1993. Appellee again failed to respond to the 30–day letter and notice of deficiency by the IRS. As Klein also failed to file a petition in Tax Court, on April 4, 1994, the IRS proceeded with an assessment of tax against Klein in the amount of $12,749.00. A Notice of Balance Due was issued on April 4, 1994, and a Notice of Intent to Levy was issued on April 25, 1994.

Appellee claims that sometime during the years 1994–1995, he became aware of a tax amnesty program offered by the IRS. He was "scared that [he] hadn't filed," and when he heard of the program, thought it a good opportunity to file his delinquent returns and "get on with [his] life." (Klein Dep. at 13). There is no evidence in the record, however, indicating whether Appellee actually qualified for the IRS program or whether he actually participated as required by the IRS. Moreover, there is no evidence in the record regarding the details of the purported amnesty program.

The Bankruptcy Court cited an IRS news release which provides some guidance as to existing programs for taxpayers who are delinquent in filing their returns. In 1992, IRS Commissioner Shirley Peterson announced the purpose of the agency's approach to "solving the non filer problem" was to "improve tax compliance across the board and ... to get everyone who is required to file a return to do so." *IRS Reaches Out to Bring Non filers Back*

*Into the Tax System*, 1992 WL 245560, I.R.S. News Release 92–94 (Sept. 30, 1992). The IRS however, stressed that its "new approach to dealing with non filers is not a blanket exoneration," but that the IRS would forebear recommending criminal prosecution of any taxpayer who came forward, made a voluntary disclosure, and filed an accurate tax return. *Id.*

Although it announced this "new approach" in September 1992, the IRS has made a practice of considering a taxpayer's voluntary disclosure since 1952, when determining whether to recommend criminal prosecution. *IRS Says Non filers who come Forward are not Prosecuted*, 1992 WL 359981, IR–92–114 (Dec. 7, 1992).[2] In particular:

> The IRS' voluntary disclosure practice is not an amnesty or a grant of immunity from prosecution. While the IRS will not assure that it would never, under any circumstances, recommend the criminal prosecution of an individual who comes forward voluntarily to report the failure to file of one or more tax returns, the IRS' practice has been not to do so where the person:
>
> a. informed the IRS that he/she has not filed tax returns for one of [sic] more taxpayer periods;
>
> b. had only legal source income, in other words no part of the income was earned from activity which is illegal under federal or state law;
>
> c. made the disclosure prior to being contacted by the IRS—in this context, "contact by the IRS" means that the taxpayer and/or the taxpayer's representative has received notification by the IRS by a telephone call, letter or per-

---

**2.** Although the Bankruptcy Court does not cite to the December 7, 1992 news release, that release references the same voluntary disclosure program discussed in the September 30, 1992 news release.

sonal visit that the taxpayer is under criminal investigation;

    d.  either filed a true and correct tax return or cooperated with the IRS in ascertaining the correct tax liability; and,

    e.  either paid in full the amount due or, in those situations where the taxpayer was unable to make full payment, made bona fide arrangements to pay. *Id.* These are considered five eligibility requirements for participating in the voluntary disclosure program. *Id. United States v. Knottnerus,* 139 F.3d 558, 560 (7th Cir.1998).

Klein contacted a certified public accountant who prepared for him tax returns, or 1040EZ forms ("1040 Forms" or "Forms 1040"), for 1990 and 1991. Appellee submitted 1040 Forms to the IRS on March 10, 1995, but without payment of his tax liabilities. Appellee's 1040 Forms reflected the identical tax liabilities previously determined by the IRS and shown on the SFR forms prepared by the IRS.

Thereafter, on April 21, 1998, Klein filed a petition for relief under Chapter 7 of the Bankruptcy Code. He received a discharge on August 6, 1998. Klein subsequently reopened his bankruptcy action for the sole purpose of filing an adversary proceeding to determine the dischargeability of his 1990 and 1991 federal income tax liabilities.

## II. *DISCUSSION*

The dispositive issue before the Bankruptcy Court on the parties' cross-motions for summary judgment was whether the 1040 Forms filed by the Debtor in 1995 qualified as "returns" for purposes of 11 U.S.C. § 523(a)(1)(B) (" § 523" or "section 523"). The Bankruptcy Code does not allow discharge of a tax "with respect to which a return, if required—(i) was not filed; or (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition." 11 U.S.C. § 523(a)(1)(B). If the 1995 filings do not constitute returns under § 523(a)(1)(B), then § 523(a)(1)(B)(I) applies, and Klein's tax liabilities for 1990 and 1991 are not dischargeable. On the other hand, if Klein's 1995 filings constitute "returns," then the taxes are dischargeable under § 523(a)(1)(B)(ii) because the returns were filed more than two years before the Petition Date.

The Bankruptcy Code does not define the term "return" in section 523 or anywhere else. Most courts therefore apply a four-prong test, known as the *"Beard* test," to determine whether a debtor's document qualifies as a return. To qualify as a return, the document must: (1) purport to be a return, (2) be executed under penalty of perjury, (3) contain a sufficient data to allow the calculation of tax, and (4) **represent an honest and reasonable attempt to satisfy the requirements of the tax law.** *In re Hatton,* 220 F.3d 1057, 1060–61 (9th Cir.2000) (emphasis supplied) (citing to *Beard v. Comm'r,* 82 T.C. 766, 777–78, 1984 WL 15573 (1984), aff'd, 793 F.2d 139 (6th Cir.1986)); *United States v. Ralph,* 266 B.R. 217, 219 (M.D.Fla.2001); *In re Billman,* 221 B.R. 281, 282 (Bankr. S.D.Fla.1998). For ease of reference the last prong is referred to as the "Honest and Reasonable Attempt" prong. The *Beard* court derived its four-prong test from the principles stated in the Supreme Court cases of *Germantown Trust Co. v. Comm'r,* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940); and *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934). *In re Hindenlang,* 164 F.3d 1029 (6th Cir.1999).

The question considered by the Bankruptcy Court here relates to the Honest and Reasonable Attempt prong of the *Beard* test. The narrow issue is whether Appellee's 1990 and 1991 1040 Forms, filed after the IRS prepared SFRs [3] and assessed taxes ("post-assessment"), constitute an honest and reasonable attempt by Appellee to satisfy the requirements of the tax law.

**A.   The Bankruptcy Court did not err in declining to follow the per se rule of Hindenlang and in not shifting the burden of proof to Klein once the United States established that Substitutes for Return were prepared prior to Klein's 1040 Forms.**

■   While Appellant has identified four separate issues on appeal, the gravamen of its complaint is that the Bankruptcy Court erred in not applying the rationale employed by the Sixth Circuit in *Hindenlang*, 164 F.3d 1029 (6th Cir.1999), to its determination of whether Klein's post-assessment Forms constitute "returns" under section 523. The Court therefore begins her analysis by examining whether the Bankruptcy Court correctly declined to follow *Hindenlang*.

The facts in *Hindenlang* were similar to the ones presented here. The debtor in *Hindenlang* did not file his 1040 Forms until after the IRS had assessed taxes. *Hindenlang*, 164 F.3d at 1031. The debtor also initiated an adversary proceeding for a determination that his tax liabilities were dischargeable under the Bankruptcy Code. *Id.* Applying the *Beard* test, the *Hindenlang* court held that returns filed after an IRS tax assessment cannot be considered "returns" when they serve no tax purpose or have no effect under the Internal Revenue Code ("tax code"). *Id.*

at 1034. Consequently, under *Hindenlang*, post-assessment returns which have no effect under the tax code cannot satisfy the Honest and Reasonable Attempt prong **as a matter of law** (the "*Hindenlang per se* rule"). *Id.* The *Hindenlang* court concluded the government had met its burden of proving an exception to discharge by establishing that the debtor's actions were not an honest and reasonable attempt to comply with the tax laws. *Id.* (finding debtor also did not indicate a tax purpose for his late 1040 Forms).

The *Hindenlang* court focused on the debtor's delayed filing and whether such filing served a tax purpose. *Hindenlang*, 164 F.3d at 1034. The analysis in *Hindenlang* appears more concerned with the effects of the delayed filing under the tax code rather than the Bankruptcy Code. *See id.* (holding a Form 1040 is not a return if it has no effect under the Internal Revenue Code); *In re Crawley*, 244 B.R. 121, 127 (Bankr.N.D.Ill.2000) ("[T]he law and results outside of bankruptcy appear to drive the Sixth Circuit's approach."). This is so, notwithstanding that "the Internal Revenue Code does not define 'return,' and no statutory authority was cited [by *Hindenlang*] for the conclusion that the Internal Revenue Code trumps the Bankruptcy Code when deciding an issue under the latter Code." *In re Payne*, 306 B.R. 230, 237–38 (Bankr.N.D.Ill.2004).

As a creditor, the United States had the initial burden of establishing an exception to the dischargeability of Klein's tax liabilities by a preponderance of the evidence. *In re Griffith*, 206 F.3d 1389, 1396 (11th Cir.2000); *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Consistent with the *per se* rule of *Hinden-*

---

**3.** The parties agree the SFRs filed by the IRS are not "returns" for purposes of § 523(a)(1)(B). *See, e.g., In re Bergstrom*, 949 F.2d 341, 343 (10th Cir.1991); *In re Hofmann*, 76 B.R. 853 (Bankr.S.D.Fla.1987).

*lang,* the United States suggests it met its burden because Klein's 1990 and 1991 returns were filed post-assessment. According to the United States, Klein's 1990 and 1991 returns "were legal nullities because they merely restated the tax liabilities previously assessed for such years, and had no effect on his tax liabilities." *In re Klein,* No. 98–13391–BKC–RAM, 2003 WL 696856, at *3 (Bankr.S.D.Fla. Jan.13, 2003). The United States argued before the Bankruptcy Court that since Klein's post-assessment Forms 1040 served no tax purpose under the tax code, they should not be treated as "returns" for dischargeability purposes. *Id.*

As a result, the Bankruptcy Court began its analysis with the threshold legal issue: "Can a form 1040 filed after assessment with the same tax liability assessed by the Government ever constitute a return in determining dischargeability under § 523(a)(1)(B)(ii)?" After a thorough and well-reasoned analysis, the Bankruptcy Court answered that question in the affirmative by rejecting the *Hindenlang per se* rule. The undersigned agrees.

Courts rejecting the *Hindenlang per se* rule have found the rule to be inconsistent with a statutory construction of the Bankruptcy Code. *See, e.g., In re Nunez,* 232 B.R. 778, 782 (9th Cir. BAP 1999) (Bankruptcy Code does not require return to be filed prior to assessment); *In re Savage,* 218 B.R. 126 (10th Cir. BAP 1998); *In re Crawley,* 244 B.R. at 127 (declining to read into § 523(a)(1)(B)(I) a requirement that returns be filed prior to assessment). For example, the language of § 523(a)(1)(B)(ii) specifies particular consequences when a return is filed untimely. Section 523(a)(1)(B)(ii) does not allow a discharge when a return is "filed after the date on which such return was last due" and within two years of filing the petition for bankruptcy. The plain language of the statute indicates that a late return may be an automatic bar to discharge only when the late return is filed within two years of the petition for bankruptcy. A *per se* rule thus appears inconsistent with the language of the Bankruptcy Code.

On appeal, the United States insists *Hindenlang* is the correct application of the law because a "bright-line approach protects the system of self-assessment that is so vital to our income tax system." (Br. for Appellant at 12). This policy argument, however, ignores the interests served by § 523(a)(1)(B). Indeed, as one court has recognized: "The Government's policy-based rationales regarding the disruption of post assessment filings on the tax system cannot result in a strained interpretation of the Bankruptcy Code to disregard or expand upon the statutory language." *Payne,* 306 B.R. 230, 2004 WL 404482 at *7.

The *Hindenlang per se* rule also creates a very broad exception to the discharge of tax liabilities under § 523(a)(1)(B), and for this reason is not favored. Under *Hindenlang,* a debtor who files a post-assessment return can never be eligible for a discharge of tax liabilities because a post-assessment return fails to satisfy the Honest and Reasonable Attempt prong as a matter of law. While the weight of authority recognizes the *Hindenlang* rule, most courts also consider the debtor's delayed filing of a return in the context of all the surrounding circumstances to determine whether a debtor has satisfied the Honest and Reasonable Attempt prong of *Beard. See e.g., In re Hetzler,* 262 B.R. 47, 54 (Bankr.D.N.J.2001) (finding debtor's post-assessment conduct relevant to issue of debtor's honest and reasonable attempt to comply); *In re Pierchoski,* 243 B.R. 639, 643 (Bankr.W.D.Pa.1999) (applying *Hindenlang* to require debtor to show post-assessment filing served a tax purpose).

In *Hetzler*, the district court adopted the *Hindenlang* rule to find only that the government "met its threshold burden to establish that no 'return' was filed." *Hetzler*, 262 B.R. at 54. The *Hetzler* court noted that "a debtor may successfully assert that he has made an honest and reasonable attempt to comply with the tax laws, even after assessment, by providing sufficient facts to substantiate such an effort." *Id.*

Adopting a *per se* rule renders the Honest and Reasonable Attempt prong of the well-established *Beard* test meaningless. *See, e.g., In re Payne*, 306 B.R. 230, 236 (Bankr.N.D.Ill.2004) (stating the *"Hindenlang* opinion would remove all consideration of the debtor's intent from the *Beard* test . . . ."). Indeed, one bankruptcy court rejecting *Hindenlang* has explained that "each case should be reviewed on an individual basis and . . . the debtor should have an opportunity to make a specific factual showing that his or her late submissions were a reasonable attempt to comply with the tax law." *In re Rushing*, 273 B.R. 223, 227 (Bankr.D.Ariz.2001).

Even the *Hindenlang* court acknowledged the possibility that situations may exist where the debtor may show a tax purpose for filing a post-assessment return. The Sixth Circuit noted:

> We do not conclude that were Hindenlang able to show a tax purpose for filing a Form 1040 after the IRS has made an assessment, he would automatically satisfy the fourth prong of the *Beard* test. The government could still produce particularized evidence showing that such a late filing of a Form 1040 was neither an honest nor reasonable attempt to comply with the tax law. We save resolution of that hypothetical case for another day.

*Hindenlang*, 164 F.3d at 1035 n. 7. The present case may arguably fall within the hypothetical situation the *Hindenlang* court expressly declined to reach, as is explained below. *Id.*

After the Bankruptcy Court entered the order under review, the Fourth Circuit also considered the question presented here. The Fourth Circuit rejected the *Hindenlang per se* rule, precluding any post-assessment filing from ever qualifying as a return, as going "too far." *In re Moroney*, 352 F.3d 902, 907 (4th Cir.2003). In *Moroney*, the court determined that the debtor should be permitted to demonstrate that the delayed filing was nonetheless an honest and reasonable attempt at self-assessment. *Id.* The Fourth Circuit declined to apply a bright-line test because "[c]ircumstances not presented in this case might demonstrate that the debtor, despite his delinquency, had attempted in good faith to comply with the tax laws." *Id.*

The undersigned declines to apply the *Hindenlang per se* rule to the Honest and Reasonable Attempt prong of the *Beard* test. The Honest and Reasonable Attempt prong may be satisfied under appropriate circumstances, notwithstanding that the debtor has filed a return post-assessment. Therefore, the United States did not satisfy its burden of proving an exception to discharge by merely establishing that Klein's forms were filed post-assessment. As to the United States' first and second issues on appeal, the undersigned finds that the Bankruptcy Court did not err in failing to apply the *per se* rule of *Hindenlang* and in not automatically shifting the burden to Klein when presented solely with this argument, particularly when Klein presented reasons for his delay.[4]

---

[4]. The United States' Motion for Summary Judgment was based solely on the *Hindenlang* *per se* rule, a pure legal question. In its memorandum in support of its Motion, the

**B. However, the Bankruptcy Court erred in requiring the United States to prove a lack of good faith by Klein in submitting his 1040 Forms for the years 1990 and 1991, and in applying a subjective standard to determine whether the 1040 Forms were tax returns for purposes of 11 U.S.C. § 523(a)(1)(B).**

The third and fourth issues on appeal concern the analytical method applied by the Bankruptcy Court under the Honest and Reasonable Attempt Prong after its rejection of the *per se* rule urged by the United States. The Bankruptcy Court articulated the following question: "If Form 1040s filed after assessment are not *per se* disqualified as 'returns,' what is the standard for determining whether the post-assessment filing constitutes an 'honest and reasonable attempt to comply with the tax law?'" *Klein*, 2003 WL 696856 at *5.

Several courts confronted with the same question have identified a "circuit split" and have been compelled to choose between two lines of cases following either the *Hindenlang per se* rule or a "good faith" inquiry explained in *In re Nunez*, 232 B.R. 778 (9th Cir. BAP 1999), in the absence of a decision by their intermediate appellate courts. *See, e.g., Crawley*, 244 B.R. at 126 ("[T]he Court must choose which of the two lines of authority to follow, absent a binding Seventh Circuit prec-

edent."); *United States of America v. Woods*, Case No. 1:02–CV–1742–SEB–VSS, 2004 WL 882057, *2 (S.D.Ind. Mar.12, 2004) (finding that the majority of courts have adopted the interpretation urged by the government); *see also, Effect of Returns Filed After Assessment on the Discharge of Taxes,* Fed. Tax. Coordinator 2d (RIA) ¶ V–7364.1 (2d ed. 2004) ("Courts are split on the treatment of returns filed after IRS assesses taxes for purposes of determining the dischargeability of taxes under 11 USC § 523(a)(1)(B)."). The Bankruptcy Court for the Middle District of Florida has noted there are "two lines of cases with conflicting results." *Ralph v. United States of America*, 258 B.R. 504, 509 (Bankr. M.D.Fla.2000), *rev'd United States v. Ralph*, 266 B.R. 217 (M.D.Fla.2001).[5] In rejecting the *Hindenlang* rule, the *Ralph* bankruptcy court applied the *Nunez* good faith inquiry to determine whether the Honest and Reasonable Attempt prong had been satisfied. *Id.* (finding that satisfaction of fourth prong "essentially turns on whether the debtor acted in good faith in filing the document, and the good faith inquiry should focus on the debtor's intent at the time the returns were filed.").

The Bankruptcy Court in the present case relied on *In re Nunez*,[6] the analysis of

United States does not cite to any record evidence aside from Klein's post-assessment filing, to support its position that Klein's filing is not an honest and reasonable attempt to comply with the tax laws. Rather, the United States chose to rely entirely on the *per se* holding of *Hindenlang*. (United States' Mot. Summ. J. at 5). The United States' position was further illustrated at the hearing wherein counsel for the government stated that under *Hindenlang*, a post-assessment filing can *never* qualify as a return under section 523(a)(1)(B). (Tr. July 12, 2002 Hr'g at 15). In light of Klein's argument that his post-assessment filing served a tax purpose under the identified IRS amnesty program, the United States

could have at least attempted to produce particularized testimony or records showing that Klein's filings were not honest and reasonable attempts to comply with the tax law. *See Hindenlang*, 164 F.3d at 1035 n. 7.

5. The Middle District of Florida reversed the bankruptcy court in *Ralph* following a failure by the debtor to file a brief, and because the district court rejected *Nunez* for the same reasons urged here by the United States.

6. The United States suggests the *Nunez* decision has been implicitly overruled by *In re Hatton*, 220 F.3d 1057, 1060 (9th Cir.2000) ("*Hatton II* "). The *Nunez* court relied on *In*

the bankruptcy court for the Middle District of Florida in *Ralph*, which applied *Nunez*, as well as *Crawley* and other cases rejecting the *Hindenlang per se* rule, to conclude that the standard for determining whether a debtor's forms satisfy the Honest and Reasonable Attempt prong is the **"good faith inquiry."** *Id.* (emphasis added) (citing *Nunez*, 232 B.R. 778; *Ralph*, 258 B.R. at 509; and *Crawley*, 244 B.R. 121). The Bankruptcy Court considered whether Klein had "acted in good faith focusing on the Debtor's intent at the time he filed the delinquent 1040s in 1995." *Klein*, 2003 WL 696856 at *6. Relying primarily on what it considered uncontroverted evidence showing that Klein's late filed 1040 Forms could serve a tax purpose because they were filed pursuant to an IRS-sponsored program, the Bankruptcy Court found the United States had failed to meet its burden of proving an exception to discharge. *Id.* at *7. The next consideration is whether the Bankruptcy Court's reliance on *Nunez*, *Crawley*, and *Ralph* was appropriate.

1. *Nunez' s"Good faith Inquiry" Should be Limited to a Particular Factual Context—Wrong Form or Inaccurate Information*

In *Nunez*, the IRS argued the debtor's post-assessment 1040 Forms were not an honest and reasonable attempt by the debtor to comply with the tax laws. A debtor is required to file the forms in good faith, and because the debtor had filed his

forms solely to discharge his tax debt, the IRS argued good faith could not exist. *Nunez*, 232 B.R. at 780–81. The *Nunez* court noted the requirement that a debtor act in good faith in filing a document purporting to be a return came from the *Germantown* Supreme Court case. *Id.* at 782 (citing *Germantown Trust Co.*, 309 U.S. at 308, 60 S.Ct. 566). *Nunez* described *Germantown* as a case involving a petitioner who had filed the wrong form, although the form still contained all data necessary to allow computation and assessment of the petitioner's tax liability. *Id.* Thus, the Supreme Court's analysis related to whether the petitioner had made a good faith effort to file a form the petitioner believed was correct.

In rejecting the IRS bad faith argument, the *Nunez* court stated:

> The good faith inquiry under Section 523(a)(1)(B) should focus on the debtor's intent at the time the returns are filed. This keeps the inquiry relevant to Section 523(a)(1)(B). A focus on the delay in filing, or the number of missed years is relevant instead to an inquiry under Section 523(a)(1)(C) [regarding debtor's fraud or willful attempt to evade taxes].

*Id.* at 783. The *Nunez* court further held "the issue of good faith generally should arise **only where the creditor contends that the form of the document is not proper.**" *Id.* (emphasis added).

The factual situation described in *Nunez*, as considered by the Supreme Court

re *Hatton*, 216 B.R. 278 (9th Cir. BAP 1997) ("*Hatton I*"), to find that the "preparation of substitute returns and assessment by the IRS does not act as a complete bar to efforts by the Debtor to file a return. That is, the Debtor can still take actions which will satisfy Section 523(a)(1)(B)." *Nunez*, 232 B.R. at 781–782. As a result, *Nunez* declined to apply the *per se* rule from *Hindenlang*. *Id.* at 782. *Hatton II* reversed *Hatton I* without discussing the intermediate holding of *Nunez*,

which had relied on *Hatton I* to reject the *per se* rule. Therefore, it does not appear that *Nunez'* rejection of the *per se* rule was implicitly overruled by the Ninth Circuit in *Hatton II*, because the *Hatton II* court did not adopt the *Hindenlang* rule in reversing *Hatton I*. *See Rushing*, 273 B.R. at 227 (noting had Ninth Circuit adopted *Hindenlang*, it would not have also considered debtor's intent or whether submissions were filed under penalty of perjury).

in *Germantown*, is that the debtor in good faith files the wrong IRS form, but still provides correct and sufficient data. In this scenario, the wrong form may still serve a tax purpose, and the debtor should not be penalized for a good faith mistake in filing the wrong form. Curiously, although the debtor's good faith should generally be considered only when the government challenges the propriety of the form used by debtor, such challenge was not raised in *Nunez*. Nevertheless, the *Nunez* court only considered evidence of the debtor's intent *at the time of filing*, and found the IRS had failed to raise an issue of fact on the question of good faith. *Id.*

The *Germantown* factual scenario was presented in *Crawley*, and thus the bankruptcy court in *Crawley* correctly applied the *Nunez* rationale when it allowed the debtors' discharge of their tax liabilities. In *Crawley*, the IRS did not present evidence that the debtors' late forms were filed post-assessment. *Crawley*, 244 B.R. at 126. The IRS instead challenged whether the forms filed by the debtors fulfilled the legal requirements of income tax returns, as the reported income was overstated. *Id.* The *Crawley* court examined the good faith intent of the debtors at the time the returns were filed. *Id.* at 128. The evidence in *Crawley* showed the debtors' accountant prepared the forms based on all information available to him at the time, and the returns were facially complete and in proper form. *Id.* at 128.

▮ The application of a good faith inquiry in *Crawley* was appropriate because the IRS challenged whether the debtors' forms were proper income tax forms, not whether the forms served a tax purpose. The intent of the debtor at the time of filing is a relevant inquiry when the debtor uses the wrong form or when the debtor inaccurately states information on the form. Under this factual scenario, such an inquiry properly focuses the issues to address the Honest and Reasonable Attempt prong of the *Beard* test.

The facts in *Ralph* are distinguishable from those presented in *Crawley*. In *Ralph*, the debtor filed her forms post-assessment. Relying on *Nunez* and *Crawley*, the bankruptcy court in *Ralph* determined that the Honest and Reasonable attempt prong turned on an examination of the debtor's "good faith" intent at the time the returns were filed. *Ralph*, 258 B.R. at 509. In limiting the inquiry to the time the returns were filed, as the court had similarly done in *Nunez*, the bankruptcy court did not consider the reasons for the debtor's delay in filing. *See id.* Reliance on the good faith analysis was misplaced under the facts presented in *Ralph* because, similar to the issues raised in *Nunez*, no claim was made that the forms used by the debtor were improper.

Nonetheless, while *Nunez* and *Ralph* may have improperly applied a good faith inquiry, the rationale supporting such an inquiry in the specific factual scenario the *Nunez* court described—improper form context—is consistent with an examination of the Honest and Reasonable Attempt prong under the exception noted by *Hindenlang* and the weight of authority. *Nunez* does not articulate a distinct test, but rather describes how the Honest and Reasonable Attempt Prong may be satisfied under a particular set of facts. *In re Miniuk*, 297 B.R. 532, 542 (Bankr.N.D.Ill. 2003) ("In choosing to follow the *Hindenlang* line of cases, I am adopting a fact-based test which requires some showing of good faith on the part of a debtor, but does not set up a bright-line pre/post assessment standard."). A choice between the *Hindenlang* and *Nunez* lines of cases is not necessary for determining the Honest and Reasonable Attempt prong here. *See id.* (finding *Hindenlang* "simply estab-

lished that a fact-based inquiry would in most instances be necessary to resolve the dischargeability issue").

### 2. Satisfaction of Honest and Reasonable Attempt Prong in "Post–Assessment" Context

■ In the present case, where a debtor files his tax forms post-assessment, the Honest and Reasonable Attempt prong should not be considered satisfied merely by examining the intent of the debtor at the time of the filing of the return. *Nunez* and *Ralph* appear to be the exception. Although falling short of accepting the *Hindenlang per se* rule, most courts have held that an *unjustified* delay in filing tax forms, after an IRS assessment, cannot satisfy the Honest and Reasonable Attempt prong, because the post-assessment form serves no tax purpose. *See, e.g., Moroney,* 352 F.3d at 905–06 (citing cases) (forms filed after an involuntary assessment rarely qualify as honest and reasonable attempts to comply with tax laws); *In re Weintraub,* 290 B.R. 410, 415 (Bankr. M.D.Fla.2002) (following the "great majority of other courts" to hold that belated 1040 forms have no legal purpose); *Woods,* 2004 WL 882057 at *3. The concept was well stated by the *Moroney* court: "Simply put, to belatedly accept responsibility for one's tax liabilities, only when the IRS has left one with no other choice, is hardly how honest and reasonable taxpayers attempt to comply with the tax code." *Moroney,* 352 F.3d at 906. Nevertheless, the *Moroney* court recognized that other cases may present circumstances where a debtor may demonstrate good faith compliance with the tax laws despite the debtor's post-assessment filing. *Id.* at 907 (citing *Rushing,* 273 B.R. at 227).

The bankruptcy court in *Rushing* applies the proper standard, in this Court's assessment, for determining whether forms filed post-assessment constitute returns for the purposes of § 523(a)(1)(B). The *Rushing* analysis suggests the Honest and Reasonable Attempt prong is comprised of an objective as well as a subjective component. In *Rushing,* the bankruptcy court had to determine whether the debtor's submission of 1040 Forms associated with his "offers in compromise" satisfied the Honest and Reasonable Attempt prong. *Rushing,* 273 B.R. at 227. Recognizing that IRS consideration of "offers in compromise" is authorized under the Internal Revenue Code, the court examined whether the debtor's 1040 Forms had a tax *consequence. Id.* at 228.

■ The debtor submitted his "offer in compromise" based on "doubt as to collectability," a possible ground for the IRS to accept the taxpayer's offer. *Id.* at 228. However, in the context of "doubt as to collectability," as described in 26 C.F.R. § 301.7122–1T(b)(3), 1040 Forms have no tax consequence, because the amount of liability assessed for a particular tax year is not at issue. *Id.* The relevant issue is the ability to collect the liability from the taxpayer. *Id.* Having found the debtor's 1040 Forms served no tax consequences, the court next examined whether other facts established the debtor's honest and reasonable effort to comply with the tax laws. *Id.* The court concluded that the debtor had failed to raise an issue of fact to defeat summary judgment, as there was no evidence regarding the debtor's reasons for failing to file returns during the relevant tax years. *Id.* Thus, in the context of post-assessment forms, circumstances such as the debtor's delinquency in filing, in addition to the tax consequences of the belated filing, are relevant to a determination of whether the debtor satisfies the Honest and Reasonable Attempt prong.

■ The Bankruptcy Court in the present case found that "By compelling [an]

Amnesty participant to file Forms 1040s to get the amnesty benefits, the Government implies a tax purpose for these returns. By filing the Forms 1040s in this particular case, this Debtor fulfilled that tax purpose." *Klein,* 2003 WL 696856 at *7. *Cf. Hindenlang,* 164 F.3d at 1035 (finding late filing of a return does not remove criminal liability under 26 U.S.C. § 7203); *Weintraub,* 290 B.R. at 414 (finding late return served no tax purpose as late filed Form 1040 has no effect on imposition of criminal or civil liability). The Bankruptcy Court relied on an IRS news release regarding the agency's voluntary disclosure program, which is not intended to serve as an amnesty or grant of immunity. Such news release, however, is insufficient to support the finding that Klein's post-assessment filing served a *tax purpose.* This is particularly so given that the voluntary disclosure program has several eligibility requirements for participation, and the record does not reflect whether Klein's post-assessment filing qualified him for participation.

The Bankruptcy Court also did not make any other findings with respect to, for example, Klein's reasons for his delay in the filing of his returns. The reasons for the delinquency of the debtor in his delayed filing are relevant along with all the other circumstances of the case for determining the Honest and Reasonable Attempt prong. *Moroney,* 352 F.3d at 906 (agreeing with weight of authority that a debtor's delinquency is relevant); *Rushing,* 273 B.R. at 227. Because the finding regarding Klein's fulfillment of a tax purpose is unsupported in the record, and because the inquiry below focused only on the Debtor's good faith intent at the time he filed his delinquent 1040 Forms, it is

**ORDERED AND ADJUDGED** that the Final Judgment dated January 14, 2003 is VACATED and this case is REMANDED to the Bankruptcy Court for further proceedings consistent with this opinion.