**In re Edward William HENNE, Jr., Debtor.**

No. 4:03BK–01592–EWH.

United States Bankruptcy Court, D. Arizona.

Jan. 8, 2007.

Eric Slocum Sparks, Esq., Eric Slocum Sparks, P.C., Tucson, AZ, for Debtor.

Elizabeth A. Wilson, Esq., Assistant U.S. Attorney, Tucson, AZ, for Internal Revenue Service.

Dianne C. Kerns, Tucson, AZ, for trustee.

## MEMORANDUM DECISION

EILEEN W. HOLLOWELL, Bankruptcy Judge.

### *INTRODUCTION*

The Internal Revenue Service ("IRS") filed a Proof of Claim for delinquent taxes, which includes a claim for unsecured debt in the amount of $422,390.92. Edward Henne ("Debtor") contends that this debt was discharged in his previous Chapter 7 case.[1] The IRS argues that the Debtor's taxes were not discharged because the Debtor failed to file returns and therefore the taxes are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(B).

An evidentiary hearing was held on November 30, 2005, and the parties subsequently submitted Proposed Findings of Fact and Conclusions of Law. The evidence demonstrates that the Debtor failed to file returns under 11 U.S.C. § 523(a)(1)(B). Consequently, his delinquent tax debts were not previously discharged and he does not qualify to be a Chapter 13 debtor because his unsecured debts to the IRS exceed the limit of 11 U.S.C. § 109(e).[2]

---

1. The Debtor makes this contention in the Amended Joint Pre–Trial Statement.

2. The dollar amount is adjusted periodically; the limit was $290,525 when the Debtor filed his case on April 1, 2003.

### *FACTS*

In February 1992, the Debtor became very ill and was paralyzed for a period of time; he underwent therapy for nine months. In December 1997, he injured an artificial leg and required surgery. The Debtor testified that personal problems, including a divorce in 1991, interfered with his ability to file tax returns. The Debtor did not file timely tax returns for the 1992, 1993, 1994, 1995, 1996, 1999, 2000 and 2001 tax years.[3]

In 1997, the IRS issued statutory notices of deficiency to the Debtor for the 1992 through 1995 tax years due to the Debtor's failure to file returns for those years. Following its procedures, the IRS first prepared substitute returns; when the Debtor failed to respond to the notice of substitute returns, the IRS issued the statutory notices of deficiency. The notices of deficiency provided the amounts of the tax deficiencies calculated by the IRS and advised the Debtor of his right to seek a redetermination of these deficiencies in the Tax Court. A statutory notice of deficiency provides the taxpayer with a ninety-day period within which to agree with or contest the deficiency. If the taxpayer does not contest the deficiency within the 90–day period, taxes can be assessed pursuant to 26 U.S.C. § 6213.

The Debtor did not contest the deficiencies within the ninety-day period. Thereafter, the IRS assessed the Debtor's taxes, interest and penalties for the 1992 through 1995 tax years. The 1993 tax liabilities were assessed on March 17, 1997; the 1992, 1994 and 1995 liabilities were assessed on November 10, 1997.

The Debtor testified that he met with an IRS examiner in 1997 concerning his 1992 and 1993 taxes. He also testified that he had subsequent meetings with the IRS examiner.

On September 29, 1998, the Debtor submitted Forms 1040 for the 1992 and 1993 tax years to the IRS. On December 13, 1998, the Debtor submitted Forms 1040 for the 1994 and 1995 tax years. The IRS treated the returns as a request for an audit reconsideration.

On April 5, 1999, the IRS sent an examination letter to the Debtor requesting verification of items reported on the Debtor's Forms 1040 for the 1992 through 1995 tax years. The letter was returned to the IRS because the Debtor's forwarding address order with the post office had expired. On April 21, 1999, the IRS sent the request for verification letter to the Debtor's new address. The Debtor did not respond to the letter. On August 30, 1999, the IRS sent a letter to the Debtor advising him that because no response to the request for verification of expenses had been received, the IRS determined that no change to the original assessments was warranted and the case was closed.

On October 22, 2002, the Debtor filed a Chapter 7 petition. The Debtor sought to discharge the taxes owed for the 1992 through 1995 tax years. An Order of Discharge was entered on February 14, 2003. On April 1, 2003, the Debtor filed for relief under Chapter 13. The IRS filed a Proof of Claim on May 4, 2005, which includes unsecured claims of $422,390.92 for the tax years 1992 through 1995 and 1998.[4] The taxes were assessed due to the Debtor's failure to file returns for those years. The

---

**3.** The returns for the 1997 and 1998 tax years were not admitted into evidence.

**4.** The Debtor only contends that the taxes assessed for the years 1992 through 1995 were discharged in his Chapter 7 case. He does not contend that the 1998 taxes were discharged.

claim includes interest that had accrued as of the date that Debtor's Chapter 13 petition was filed.

## ISSUE

Do the Forms 1040 filed by the Debtor in 1998 qualify as "returns" under 11 U.S.C. § 523(a)(1)(B)?

## STATEMENT OF JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper under 28 U.S.C. § 1409.

## DISCUSSION

■ The general rule is that a Chapter 7 debtor is discharged from personal liability for all debts incurred before the filing of the petition. See 11 U.S.C. § 727(b). There are, however, exceptions to the general rule of discharge, such as the exception for unpaid taxes under 11 U.S.C. § 523(a)(1)(B). Section 523(a)(1)(B) does not discharge an individual debtor from a debt for taxes if a return was required, and the return was not filed or "was filed ... after the date on which such return ... was last due ... and after two years before the date of the filing of the petition."

■ The Bankruptcy Code does not define the term "return," so courts have constructed a four-prong test, known as the "Beard test," for determining whether a document will be deemed a return for purposes of § 523(a)(1)(B). See In re Hatton, 220 F.3d 1057, 1060–61 (9th Cir.2000); In re Nunez, 232 B.R. 778, 782 (9th Cir. BAP 1999). To qualify as a return, the document must: (1) "purport to be a return"; (2) "be executed under penalty of perjury"; (3) "contain sufficient data" to calculate the tax liability; and (4) "represent an honest and reasonable attempt to satisfy the requirements of the tax law." In re Hatton, 220 F.3d at 1060–61 (citations omitted).

■ The IRS concedes the first three prongs have been met in this case. (IRS's Proposed Conclusions of Law, ¶ 6.) At issue is whether the Debtor's Forms 1040 for 1992 through 1995, which were filed in 1998 after the IRS had assessed the Debtor's tax liability in 1997, "represent an honest and reasonable attempt to satisfy the requirements of the tax law." Id. The IRS has the initial burden of proving by a preponderance of the evidence that the debt is an exception to discharge under § 523(a)(1)(B), which includes demonstrating that the "honest and reasonable attempt" prong is not satisfied. See U.S. v. Klein, 312 B.R. 443, 448 (S.D.Fla.2004) (citations omitted); In re Hetzler, 262 B.R. 47, 54 (Bankr.D.N.J.2001). The IRS met its threshold burden that no return was filed for purposes of § 523(a)(1)(B). The IRS demonstrated that it prepared substitute returns and assessed deficiencies before the Debtor filed his late Forms 1040 for 1992 through 1995, and that the late returns served no tax law purposes because the Debtor failed to respond to the examination letter requesting verification of items reported on the Debtor's Forms 1040.

■ Although the IRS met its burden, this Court has previously held that "each case should be reviewed on an individual basis and that the debtor should have an opportunity to make a specific factual showing that his or her late submissions were a reasonable attempt to comply with the tax law." In re Rushing, 273 B.R. 223, 227 (Bankr.D.Ariz.2001); see also In re Hetzler, 262 B.R. at 54. Determining whether the "honest and reasonable attempt" prong is satisfied involves both objective and subjective components. In re Rushing, 273 B.R. at 227; U.S. v. Klein, 312 B.R. at 454.

In this case, the post-assessment Forms 1040 were treated as a request for reconsideration and, had the Debtor responded to IRS's request for verification of items reported on his belated Forms 1040, the submissions may have affected his tax liability. (Transcript at 34, 11. 18–25; 34, 11. 1–25; 35, 11. 1–18.) However, the Debtor did not follow up with the IRS after filing his submissions in 1998, and he failed to respond to the IRS's requests for supporting documentation.[5] The Debtor testified that the IRS examiner was "very helpful" when he met with her in 1997, but he made no effort to contact her or anyone at IRS concerning his post-assessment submissions. (Transcript at 75, 11. 20–21; 78, 11. 20–21.) His lack of action supports the finding that he did not expect his post-assessment forms to affect his tax liability—*i.e.*, "to satisfy the requirements of the tax law." And, in fact, the late submissions had no tax consequences.

The Debtor testified that personal problems prevented him from filing his 1992, 1993 and 1994 returns on time. (Transcript at 74, 11. 17–19.) He filed them in 1998. However, he did not offer any specific explanation for the late filing of his 1995,[6] 1996, 1999, 2000 and 2001 returns.[7] Moreover, the delays are measured in years. For example, the Debtor's 1999 tax return is dated April 8, 2005; his 2000 return is dated May 16, 2004.

In addition to his history of late filings, the Debtor also had a pattern of not responding to the IRS's letters and notices. He testified that he did not receive the IRS letter sent in April 1999, but there were several letters or notices sent to him before that time to which he never responded.

■ The Debtor has not demonstrated that he made an honest and reasonable attempt to comply with the tax law when he filed his Forms 1040 in 1998. The Debtor's conduct, taken as a whole, precludes any finding that he honestly and reasonably attempted to satisfy the law. As other courts have observed, § 523(a)(1)(B) of the Code is "meant to encourage honest and self-generated reporting by taxpayers, not to immunize non-reporting debtors, who once caught, seek to discharge their discovered tax obligations along with other debts in bankruptcy." *In re Hetzler*, 262 B.R. at 54–55, quoting *In re Haywood*, 62 B.R. 482, 486 (Bankr.N.D.Ill.1986). The Debtor's 1998 submissions are not "returns" for purposes of § 523(a)(1)(B); consequently, the taxes for 1992 through 1995 were not discharged in the Debtor's Chapter 7 case.

### CONCLUSION

Because the Debtor's Forms 1040 filed in 1998 for tax years 1992 through 1995 do not constitute returns for purposes of 11 U.S.C. § 523(a)(1)(B), the Debtor's tax liabilities for those years were excepted from discharge in his Chapter 7 case. Consequently, the Debtor's objection to the IRS's Proof of Claim in his Chapter 13 proceeding is overruled.

■ The IRS's Proof of Claim includes unsecured claims totaling $422,390.92. To qualify as a debtor under Chapter 13, the

---

5. Nor did the Debtor make any payment or try to arrange for installment payments.

6. Debtor's counsel believed the return for tax year 1995 had been timely filed and excluded it from his question asking why the returns had been filed late. (Transcript at 74, 11. 13–16.)

7. The Debtor testified that he broke his leg on Christmas Day in 1997, which may explain a delay in filing his return for that year. However, the 1997 tax return is not a subject of this proceeding.

Debtor's unsecured debts, at the time of filing, could not exceed the limit of $290,525 imposed by 11 U.S.C. § 109(e). Because the Debtor's unsecured debts (arising from tax years 1992 through 1995) exceed the limit set forth in § 109(e), he cannot be a Debtor under Chapter 13. Accordingly, the IRS's Motion to Dismiss the Debtor's Chapter 13 case is granted. A separate Order will be entered overruling the Debtor's objection and dismissing the Debtor's Chapter 13 case.